**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL et al., Plaintiffs,**

v.

**UNITED AIR LINES, INC., Defendant.**

No. 73 C 1082.

United States District Court,
E. D. New York.

Oct. 30, 1979.

Cohen, Weiss & Simon, New York City, for plaintiffs.

Rogers & Wells, New York City, for defendant.

## DECISION AND ORDER

GEORGE C. PRATT, District Judge:

### INTRODUCTION

Plaintiffs in this action are the Airline Pilots Association (ALPA) and several female flight attendants of defendant United Airlines, Inc. (United). Plaintiffs brought this action on behalf of themselves and, pursuant to FRCP 23(b)(2), on behalf of a class defined as all female flight attendants who are or will be employed by United and all former female flight attendants who were employed by United on or after Octo-

ber 14, 1971 and were removed from schedule, suspended, or terminated for failure to meet United's weight regulations.

Plaintiffs alleged that United engaged in sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), in the maintenance and enforcement of its weight regulations for flight attendants. The action was bifurcated for trial, and evidence on the question of whether defendants had violated Title VII was presented to the court without a jury on June 5–9, 1978. By memorandum and order dated June 12, 1979, the court filed findings of fact and conclusions of law.

The court concluded, *inter alia*, that: (1) plaintiffs had failed to prove by a preponderance of the evidence that United's separate height/weight standards for male and female flight attendants violated Title VII by discriminating on the basis of sex; (2) United's policies regarding exceptions to the weight regulations had discriminatorily favored male Hawaiian stewards; (3) because United had demonstrated special circumstances justifying discriminatory favoring of male Hawaiian stewards with respect to the granting of exceptions, there was no Title VII violation with respect thereto; and (4) plaintiffs had proved by a preponderance of the evidence that United had violated Title VII by enforcing its flight attendant weight standards program in a manner that discriminated against the plaintiff class on the basis of sex.

The parties thereafter submitted proposed orders setting forth the remedies which they believed should be provided for the violations, and filed briefs and presented argument with respect to the remedy questions. Based upon this information the court now issues the following order and decision relating to these findings and the relief to be awarded to members of the class pursuant to 42 U.S.C. § 2000e–5(g).

## ORDER

### I. *INJUNCTIVE RELIEF*

1. United, its officers, agents, employees and successors are hereby permanently enjoined from discriminating on the basis of sex in the enforcement of United's flight attendant weight regulations, including any discipline or penalties that may be imposed for violations thereof.

### II. *REINSTATEMENT AND BACK PAY TO FEMALE FLIGHT ATTENDANTS DISCIPLINED BY UNITED*

#### A. *Terminated Flight Attendants*

2. United shall within 30 days of this order offer reinstatement at full salary to each female flight attendant who has been terminated between March 24, 1972 and the date of this order for failure to meet United's flight attendant weight standards. The offer shall specify an effective date between 60 days and 90 days from the date of the offer.

3. For seniority system purposes, any female flight attendant reinstated pursuant to ¶ 2 shall be credited with having been in the continuous employ of United from the date of her termination until the date of her reinstatement.

4. Any female flight attendant reinstated pursuant to ¶ 2 must comply with United's weight regulations in effect on the date of reinstatement and thereafter.

5. United may, as a condition for reinstatement, require any female flight attendant reinstated pursuant to ¶ 2 to undergo a program of training in order to update her knowledge and skills to correspond with United's current practices and equipment.

6. United shall pay to each female whose employment was terminated between March 24, 1972 and the date of this order for failure to meet United's flight attendant weight standards, back pay for the period between the date of her termination and the effective date of the reinstatement to be offered in accordance with ¶ 2 of this order. The amount of back pay shall be the difference between (a) the wages and benefits she would have earned from United during said period had she not been wrongfully terminated and (b) the sum of (i) the amount actually earned, or earnable with reasonable diligence, during said peri-

od from other work which would not have been performed had she not been terminated, and (ii) the amount received from unemployment insurance and similar benefits.

**B. *Flight Attendants Suspended or Removed from Schedule***

7. United shall immediately restore to flying status, at full salary, each female who is off active flight status on the date of this order because of a suspension or removal from schedule for failure to meet United's flight attendant weight standards.

8. For seniority system purposes, any female flight attendant who is restored to flying status pursuant to ¶ 7, or who previously lost seniority as the result of a suspension or removal from schedule because of a weight violation between March 24, 1972 and the date of this order, shall be credited with having been in the continuous employ of United from the date of her suspension or removal from schedule until the date of her restoration to flying status.

9. United shall pay to each female flight attendant who, between March 24, 1972 and the date of this order, lost money because of a suspension or removal from schedule for failure to meet the weight standards, back pay for the period of each such suspension or removal. The amount of back pay shall be the difference between (a) the wages and benefits she would have earned during said period had she not been wrongfully suspended or removed from schedule and (b) the sum of (i) the amount actually earned or earnable with reasonable diligence during said period from other work which would not have been performed had she not been suspended or removed from schedule, (ii) the amount received from unemployment insurance and similar benefits, and (iii) the amount received from any makeup of the schedule time lost as a result of the wrongful suspension or removal.

**III. *NULLIFICATION OF REFERENCES IN UNITED'S RECORDS TO DISCIPLINE AGAINST FEMALE FLIGHT ATTENDANTS***

■ 10. Any reference in United's records to any discipline taken against female flight attendants for weight violations during the period between March 24, 1972 and the date of this order is void. Within 30 days of this order, United shall add a notice to the personnel records, medical files and weight records of each female flight attendant disciplined for weight violation between March 24, 1972 and the date of this order. The notice shall indicate that all records of any kind of disciplinary action taken between March 24, 1972 and the date of this order for failure to meet weight standards (including oral warnings, letters of warning, letters of charges, removals from service, suspensions and terminations) are void. The notice shall also state that no such record may be used or considered as a predicate violation in any program of progressive discipline, nor in any other way to the employee's detriment.

**IV. *INTEREST***

11. With respect to the back pay to be paid under the provisions of this order, United shall pay interest at the rate of six percent (6%) per annum.

**V. *ATTORNEYS' FEES AND LITIGATION EXPENSES***

12. United shall pay reasonable attorneys' fees for plaintiffs' legal representation and reimburse plaintiffs for all reasonable expenses incurred in litigating this action. If the amounts of attorneys fees and expenses are not agreed to within 60 days after appeals are concluded, plaintiffs may move within 30 days thereafter to have those amounts determined.

**VI. *RETAINED JURISDICTION***

13. Until all payments required by this order have been made, the court will retain jurisdiction of this action for the purpose of issuing any additional orders needed to effectuate, clarify or enforce the purposes and intent of this order.

## DECISION

*Injunctive Relief*

■ As noted previously, the court has concluded that plaintiffs failed to prove

that United's separate height/weight standards for male and female flight attendants violated Title VII. Accordingly, United is free to continue using the flight attendant weight standards promulgated by United in May 1977. Nothing in the court's decision or order is intended to pass upon the validity of any other weight standards for male or female flight attendants that United might adopt in the future.

Paragraph 1 of the order enjoins United from discriminating on the basis of sex with respect only to the enforcement of whatever flight attendant weight regulations United may have in effect. This reflects the court's views that United's current weight standards for male and female flight attendants are valid, that United is not prohibited from adopting other standards, and that the validity of any other standard has not been determined. However, whatever standards are established, United must enforce in a non-discriminatory manner.

To insure compliance with the injunctive provisions of ¶ 1 of the order, United shall submit quarterly to ALPA a report which shall contain: (a) the names of all flight attendants who received oral warnings, letters of warnings, letters of charge, suspensions, removals from service, or termination for weight violations during the three months covered; (b) copies of the weight related records and correspondence for individuals so disciplined; and (c) data concerning the granting or denial of exceptions to the weight program during the three months covered. Each report shall be submitted to ALPA within 30 days after the end of the last month covered by the report.

*Reinstatement and Back Pay to Female Flight Attendants Disciplined by United*

A. *Identifying Disciplined Flight Attendants.*

The parties have already identified and agreed upon a list of all female flight attendants who were removed from schedule, suspended, or terminated either wholly or partially because of weight violations during the period from January 7, 1970 through May 15, 1978. The parties shall meet to identify and agree upon a list of all female flight attendants who were removed from schedule, suspended, or terminated either wholly or partially because of weight violations, during the period from May 15, 1978 through the date of the order.

B. *The Period of Discriminatory Enforcement.*

■ Plaintiffs argue that the period of discriminatory enforcement began in 1950 when United first hired males for the newly created position of Hawaiian steward. Because the first EEOC charge was filed on August 10, 1972, and because § 706(g) of Title VII provides that "[b]ack pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission", 42 U.S.C. § 2000e–5(g), plaintiffs contend that the back pay remedies provided for in the order should apply to any female flight attendant who was disciplined after August 10, 1970. Viewing the Hawaiian stewards as a special group, United argues that because it did not employ any other male flight attendants until March 24, 1972, there could not have been, prior to that date, any disparate treatment of females and males in the enforcement of weight regulations.

After considering the arguments of counsel the court concludes that the beginning of discriminatory enforcement should be fixed as of March 24, 1972. Although United has maintained some form of height/weight requirements for flight attendants since 1930, United did not employ male flight attendants until March 24, 1972. It is true that prior to 1972 United did employ males as Hawaiian stewards who performed duties similar to those of the female flight attendants. However, since there were no height/weight requirements for Hawaiian stewards comparable to those for flight attendants until late 1972 (memorandum and order of June 12, 1979, finding of fact 47) United could not have discriminatorily favored the male Hawaiian stewards in enforcing weight regulations before that time.

In reaching this decision the court recognizes that in 1979 this litigation seeks to remedy wrongs which occurred over a considerable period of time and involved many individuals. Since the circumstances of each individual case is impossible to determine, however, some general principle or standard must be applied which will produce substantial justice and remedy the past discrimination which has occurred. Since March 24, 1972, the date when United first employed male flight attendants other than the special group of Hawaiian stewards, is the most apparent date for beginning discriminatory enforcement of the weight standards, the court selects that date as the beginning of the period of discriminatory enforcement.

### C. *Establishing Entitlement to Remedies.*

Those female flight attendants who were disciplined during the period of discriminatory enforcement wholly because of weight violations are entitled, without further inquiry or proof, to the remedies set forth in the order. A problem is presented, however, as to those female flight attendants who United claims were disciplined partially because of weight violations and partially for other reasons.

In *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court, considering an analogous situation, established controlling principles for dealing with the causation issues here presented. There, a teacher sought reinstatement and damages from his former employer, claiming that his employment had been wrongfully terminated because he exercised his first amendment right of free speech, and that his exercise of the protected conduct had been a contributing factor in the decision to discharge him. Finding that "[t]he constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the [protected] conduct", 427 U.S. at 285–86, 97 S.Ct. at 575, the Court stated

the burden was properly placed upon [the teacher] to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or to put it in other words, that it was a "motivating factor" in the [school] Board's decision not to rehire him. [The teacher] having carried that burden, however, the District Court should have gone on to determine whether the Board has shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct. 429 U.S. at 287, 97 S.Ct. at 576.

■ While not directly applicable, these principles provide guidance to the resolution of the remedy issues presented by this case. The court has previously determined that United practiced gender based discrimination in enforcing its weight regulations. Therefore, any female flight attendant who was disciplined even partially because of a weight violation is now deemed to have established that her violation during the period of discriminatory enforcement was a substantial factor, a motivating factor in United's decision to impose disciplinary sanctions. Therefore, under *Mt. Healthy,* the burden now shifts to United to establish by a preponderance of the evidence that the same discipline would have been imposed even in the absence of any weight violation during the period of discriminatory enforcement.

### D. *Compliance with Weight Regulations upon Reinstatement.*

■ Pursuant to ¶ 4 of the order, reinstated flight attendants must comply with United's weight regulations in effect on the date of reinstatement. The court recognizes that while out of United's employ these flight attendants, who exhibited difficulty in meeting the weight standards when there were obvious employment incentives to do so, may need a reasonable grace period in order to comply now with the weight regulations. Accordingly, beginning with the effective date of her reinstatement, a flight attendant shall be exempt from the

established weight standards for a period of time equal to one month for each year, or part of a year, since she was terminated.

During this grace period, however, a reinstated flight attendant, in order to continue to be exempt from the weight standards, shall be required to lose monthly a pro-rata portion of her excess weight (e. g., a person with a 4 month grace period and 20 lbs. to lose in order to meet her current weight requirement modified by any exception, must lose 5 pounds by the end of the first month, 10 pounds by the end of the second month, etc.). Upon loss or expiration of the exemption a reinstated flight attendant shall immediately become subject to United's non-discriminatory weight enforcement regulations.

### E. Additional Training.

Paragraph 5 of the order permits United to require reinstated flight attendants to undergo a program of training as a condition for reinstatement. The court recognizes that reinstated flight attendants may need refresher or additional training in order to be qualified to work on newly acquired aircraft or to perform job responsibilities which have been added or altered during their absence from employment. During any such training period a reinstated flight attendant shall receive the same salary she would have received if immediately restored to full flying status.

### Mechanics for Payments Pursuant to the Order

Counsel for ALPA and United shall meet within 30 days to establish procedures for determining the exact monetary amounts due to each female flight attendant pursuant to the provisions of paragraphs 6 and 9 of the order. All costs incurred in making those determinations shall be borne by United. The procedures adopted shall assure that such payments as are agreed upon shall be made within 90 days after the date of the order. Any dispute as to entitlement or computation which cannot be resolved by agreement of counsel shall be reported promptly to the court and will be referred

to a master for a hearing followed by a report and recommendation. Despite the court's imposition of the costs of such proceedings upon United, in the event of unreasonable or frivolous claims by ALPA the court may, on recommendation of the master, impose upon ALPA part or all of the costs made necessary by such claims, to be deducted from the award of attorney's fees ultimately to be made.

### Costs and Attorney's Fees

The statutory authorization for an award of costs and attorney's fees in a Title VII action is found in 42 U.S.C. § 2000e–5(k):

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs * * *.

The Supreme Court has construed the "discretionary" language of the statute to require that "a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances." *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978) (emphasis in original). *See also Albermarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). The Second Circuit found this statute to be "aimed at enforcing congressional mandates against discrimination through private actions and [a statute which] should be read 'broadly to achieve its remedial purpose'". *Carey v. New York Gaslight Club, Inc.*, 598 F.2d 1253, 1256 (CA2 1979), *quoting Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 37 (CA2 1978).

In this case one question of attorney's fees focuses on the statutory term "prevailing party". While plaintiffs did prevail to the extent that they established that United had discriminated on the basis of sex in enforcing the flight attendant weight program, plaintiffs failed in their attempts to prove Title VII violations in the varying height/weight standards for male and female flight attendants and in the exceptions granted to the Hawaiian stewards. United argues that it should be awarded attorney's fees as a prevailing party; that

ALPA should be denied attorney's fees because ALPA did not prevail within the meaning of Title VII; or alternatively, that ALPA, as a partially prevailing party, should be awarded attorney's fees reduced proportionately for the lack of total success.

■ In *Christianburg Garment Co. v. EEOC, supra,* the Supreme Court concluded that while prevailing plaintiffs should be awarded attorney's fees in all but special circumstances, a prevailing defendant could be awarded attorney's fees only if plaintiff's action was "frivolous, unreasonable, or without foundation". 434 U.S. at 421, 98 S.Ct. 694. Even assuming, *arguendo,* that United was a prevailing defendant, nonetheless, ALPA's claims about the weight standards were neither frivolous, unreasonable nor without foundation. Accordingly, the court rejects United's request for attorney's fees.

United next suggests that plaintiffs are not prevailing parties because they succeeded on only part of their case. The court does not agree. It is clear that if plaintiffs had brought a successful action seeking relief only for United's discriminatory enforcement of the weight standards, plaintiffs would have been the prevailing parties for the purposes of Title VII and § 2000e–5(k). The court can find no reason why plaintiffs should be penalized for having sought additional relief with respect to the validity of the standards themselves.

■ It is widely recognized that the "purpose of this provision for counsel fees is to facilitate the bringing of individual complaints in order to 'effectuate the congressional policy against * * * discrimination.'" *Carey v. New York Gaslight Club, Inc.,* 598 F.2d at 1256 *quoting Johnson v. Georgia Highway Express,* 488 F.2d 714, 716 (CA5 1974), and that the policies of the attorney's fees provisions are "best served by encouraging plaintiffs to seek the broadest relief they feel, in good faith, that they are entitled to." *Palmer v. Rogers,* 10 EPD ¶ 10,499 at 6130 (D.D.C.1975). *See also Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

■ While plaintiffs were unable to prove all the aspects of sex discrimination they complained of, the Title VII claims advanced against United were reasonable and brought in good faith. Moreover, the circumstances of this case prevented the claims of discriminatory conduct from being easily separated. In order to clearly present for evaluation the operative impact of United's height/weight program it was necessary and reasonable for plaintiffs to review the origin and history of the weight standards program, its relationship to the Hawaiian stewards, the hiring of other males as flight attendants, the disciplinary penalties imposed, and the overall reasonableness of the standards themselves.

Ultimately, of course, United was found to have discriminated on the basis of sex in violation of federal law, but only in its enforcement of the program. As a result, United must alter its weight standards enforcement policies to comply with Title VII and make restitution to wrongfully discharged and disciplined female employees. Plaintiffs therefore succeeded on a central, not collateral, aspect of their claims, and much of the proof presented on the other aspects was necessary for a full understanding of the successful contention.

While some courts have, in their discretion, denied attorney's fees to plaintiffs who only partially prevailed, *see e. g., Roesel v. Joliet Wrought Washer Co.,* 596 F.2d 183, 187 (CA7 1979); *Adams v. Reed,* 567 F.2d 1283 (CA5 1978), many courts have concluded that plaintiffs may recover attorney's fees although they prevailed on less than all the issues of the case. *See e. g., Rosenfeld v. Southern Pacific Co.,* 519 F.2d 527, 529 (CA9 1975); *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 429–30 (CA8 1970); *Richardson v. Civil Service Commission,* 449 F.Supp. 10, 11–12 (S.D.N.Y.1978); *Boyd v. Ozark Air Lines, Inc.,* 419 F.Supp. 1061, 1065 (E.D.Mo.1976); *Parker v. Matthews,* 411 F.Supp. 1059, 1064 (D.D.C. 1976).

Under the circumstances of this case, the court in its discretion concludes that the

purposes and underlying policies of the statute are best served by awarding plaintiffs reasonable attorney's fees and expenses for the entire litigation, to be determined as provided in the order.

*Stay Pending Appeal*

If either party takes a timely appeal from this order and judgment the provisions hereof shall be deemed stayed, without further application to the court, pending final disposition of the appeal.

SO ORDERED.