**William TUDYMAN, Plaintiff,**

v.

**UNITED AIRLINES, Defendant.**

**No. CV 84–4463–ER.**

United States District Court,
C.D. California.

Dec. 26, 1984.

---

Richard Grey, Barnett & Grey, Beverly Hills, Cal., for plaintiff.

N. Morrison Torrey, United Air Lines, Inc., Elk Grove Village, Ill., for defendant.

## MEMORANDUM OPINION

RAFEEDIE, District Judge.

Defendant's motion for summary judgment came on for hearing during normal motion calendar October 22, 1984. This Court, having considered the memorandum and declarations filed by both parties, the oral argument, and the file in this matter, grants defendant's motion. This decision is based on undisputed facts viewed in the light most favorable to the plaintiff.

## FACTS

Plaintiff filed this action June 14, 1984, alleging violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Plaintiff had applied for a position as a flight attendant with defendant, United Airlines on December 1, 1983. The rejection letter does not give any reason for the rejection, except that other candidates were better qualified. All parties admit, however, that the reason was that plaintiff's weight exceeded the amount that defendant's weight program for flight attendants established as the maximum weight for a man of his height (5' 7½"). Under the program's schedule, plaintiff could weigh no more than 163 pounds. At the time plaintiff applied for the position as flight attendant, he weighed 178 pounds—15 pounds over his maximum.[1]

---

**1.** Plaintiff's application stated that his lowest weight in the preceding twelve months was 170 pounds.

Plaintiff had previously worked for defendant as a flight attendant, beginning in June 1973. He was terminated on October 9, 1980, because of his weight. Plaintiff took his termination to arbitration, which upheld the termination. Although he did not appeal this decision, his attorney wrote to defendant in June 1982, seeking reinstatement. The request was denied.

Defendant's weight program appears to be motivated by a desire to assure the neat and pleasing appearance of its flight attendants, who have considerable contact with customers. The weight program, as set out in part in Exhibit A to plaintiff's complaint, establishes a maximum weight according to an individual's height, weight, and sex. A two pound "buffer" is also allowed. The program establishes a procedure for those who exceed the maximum weight to try to reduce their weight, and includes the option of termination for those who are unable to do so and who also refuse to transfer or resign. Finally, the program provides that *"weight exceptions may only be approved through the local M.D. department"* (italics in original).

While plaintiff exceeds the maximum weight for his height, this violation does not mean he is in poor shape. Indeed, his weight appears to result from plaintiff's avid body building, and resulting low percentage of body fat and high percentage of muscle. Before 1980, plaintiff had received medical exemptions from the weight maximum. In June 1979, however, Judge Pratt issued an opinion in a case concerning defendant's then existing weight program.[2] *See Alpha v. United Air Lines,* 26 Fair Empl. Prac. Case 607 (S.D.N.Y.1979). While he found that the weight maximums did not violate Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e–5, he found that United's disciplinary actions enforcing the policy discriminated on the basis of sex, as

did its practice and policy of giving exceptions. Judge Pratt found the latter was justified because most of the exceptions were given to men on the Hawaii flight who had been hired to give the flight a vacation flavor. 26 F.E.P. at 621–22. After this decision, the medical staff declined to provide plaintiff with a medical exception as his condition was voluntary and self-imposed.

## ISSUES PRESENTED

Defendant asserts that summary judgment must be granted on three grounds. First, defendant contends that it is not subject to section 504's anti-discrimination strictures because its "employment program" does not receive any financial assistance. Second, defendant contends that plaintiff is not protected by section 504 as he is not a handicapped individual. Finally, defendant claims that the statute of limitations bars plaintiff's claim as the Court should consider the date plaintiff was originally terminated, rather than the date his most recent application was refused. The Court will look at each of these questions in turn.

*Rehabilitation Act ... Federal Financial Assistance*

Section 504 of the Rehabilitation Act provides:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

29 U.S.C. § 794.

■ To prove a violation of the Rehabilitation Act, plaintiff must show that he is a "handicapped" person under the Act, *see* 29

---

**2.** The weight program at issue in this case appears to be a different, and more lenient, program than that approved by the district court in *Alpa,* arrived at by settlement between the parties in *Alpa.* For example, this program differentiates by age. While defendant attempts to intimate that the weight program is *mandated*

by the district court's decision, that decision only requires that the program, if it does exist, be administered or enforced in nondiscriminatory fashion. *Air Line Pilots Ass'n, Intern. v. United Air Lines,* 480 F.Supp. 1107, 1112 (E.D.N.Y.1979).

U.S.C. § 706(7) (1982); that he is "otherwise qualified" as a flight attendant, see 29 U.S.C. § 794 (1982); the existence of a relevant federally funded program; and that the weight program is discriminatory. *See Bentivegna v. United States Department of Labor,* 694 F.2d 619, 621 (9th Cir.1982) (outlining elements to be proved). Defendant disputes the first and third elements.

■ The Supreme Court has recently affirmed that § 504's ban on discrimination is limited to specific programs or activities receiving federal financial assistance. *Consolidated Rail Corp. v. Darrone,* ── U.S. ──, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984); *see also Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984) (Title IX case). Defendant presents a declaration stating that its "employment program" receives no federal financial assistance. Defendant impliedly asserts that this is the only relevant "program" and that since it receives no funding, this requirement has not been met. Defendant, however, does not deny that it receives any federal money, it merely denies that its "employment program" receives any assistance. But defendant does not provide any information that would allow this Court to determine that the assistance it does receive is unrelated to plaintiff.

Defining the appropriate program or activity is not an easy task. The higher courts have provided little guidance. In *Consolidated Rail,* ── U.S. ──, 104 S.Ct. at 1256, the Supreme Court did not reach the question, but rather remanded the case for further findings. Similarly, in *Meyerson v. State of Arizona,* 709 F.2d 1235, 1237–38 n. 1 (9th Cir.1983), *vacated* ── U.S. ──, 104 S.Ct. 1584, 80 L.Ed.2d 118 (1984) (for reconsideration in light of *Con-*

*solidated Rail),* the Ninth Circuit only stated that it had not decided the extent of nexus required between the program receiving the assistance and the plaintiff. Thus, no binding precedent instructs this Court how to define the appropriate program or activity which must receive financial assistance if plaintiff is to meet the § 504 requirement of program specificity. But this Court is aware that "the issue of program specificity cannot be properly analyzed in the abstract, but instead requires a concrete set of facts." *United States v. University Hospital,* 729 F.2d 144, 151 (2nd Cir.1984). Because such facts are entirely lacking at this point, the Court refuses to grant summary on this ground. Before this Court could grant summary judgment on this ground, it must be assured that defendant receives no federal financial assistance, that the assistance is provided for a function or purpose which is entirely unrelated to plaintiff and any or all programs or activities in which plaintiff is involved, or that plaintiff has had a sufficient opportunity to conduct discovery and has not uncovered either the existence of any federal assistance or of a connection between these funds and the plaintiff.[3]

Defendant seems to argue that it is not necessary to know what other federal assistance is received, so long as the "employment program" receives no assistance. It bases this argument on its conclusion that *Grove City* "specifically rejected this theory of 'institution-wide' coverage." Reply Memorandum at 3. Defendant's argument is wrong at three levels.

This Court is unable and unwilling to make any determination that the funding requirement is not met when defendant has not provided the faintest hint as to what exactly it means when it states that the "employment program" receives no fund-

---

**3.** This Court is not shifting the burden of meeting § 504's requirements from plaintiff to defendant. If this case were to come to trial, plaintiff must, of course, prove these elements. But when the defendant requests this Court to grant summary judgment, and the information needed to prove this requirement is in defendant's possession, defendant must persuade the Court that no such information exists. *See*

*Chaplin v. Consolidated Edison Co.,* 579 F.Supp. 1470, 1475 (D.C.N.Y.1984) ("Plaintiffs are entitled to obtain as complete a record as possible before being required to respond to the argument that they have demonstrated an insufficient nexus between the funding received by [defendant] and the position for which [plaintiff] was rejected.").

ing. Defendant has never defined "employment program" and the term is extremely ambiguous.

Defendant is confused about the meaning of institution-wide coverage. Assistance provided for one function may overlap and sufficiently affect plaintiff that the trigger may be met, even though plaintiff is not directly involved with that function. For example, if defendant received financial assistance for its health and/or fitness programs, that might provide the necessary nexus. This inquiry does *not* mean that the whole institution is captured because of the receipt of federal funds by one small section of it. Rather, it is merely a recognition that defining the relevant program is difficult and that the plaintiff may be part of several programs. Here it is important to recall that while the short-hand phrase is "program specificity," the Supreme Court itself spoke of "a program or *activity* receiving financial assistance."

Finally, defendant's interpretation of § 504's program specificity requirement after *Grove City* is far too narrow. *Grove City* provides primarily an expansive reading of when the federal assistance requirement is met. *Grove City* held that indirect assistance in the form of grants to students, rather than grants to the college itself, could trigger Title IX coverage. —— U.S. ——, 104 S.Ct. at 1220.[4] The Supreme Court then determined that the correct program in that case was the student financial aid program. *Id.* at ——, 104 S.Ct. at 1221. In so doing, the Supreme Court rejected the Court of Appeal's holding that the student grants constituted aid to the entire institution. But importantly, the Supreme Court *did not* reject the possibility that federal aid could in some situations result in Title IX (or § 504) covering the entire institution—the Supreme Court only decided that federal student grants did not have

this effect.[5] As the Supreme Court stated in *Grove City, Id.*, and repeated in *Consolidated Rail,* —— U.S. ——, 104 S.Ct. at 1221. "[s]tudent financial aid programs ... are *sui generis.*" Thus, the only holding of *Grove City* that is relevant to this case, or to most § 504 cases, is that indirect funding *is* sufficient to trigger § 504's coverage, but that the effect of the federal assistance oñ plaintiff must be more than merely "freeing up" defendant's own resources for use elsewhere. *Grove City,* therefore, neither compels nor argues for granting summary judgment on the basis of financial assistance.

Indeed, this Court finds defendant's argument to be similar to that rejected by the Supreme Court in *Consolidated Rail.* In that case, defendant received federal assistance by the government purchasing stock, as well as funds for retraining programs and termination programs. None of this money went "primarily" for employment, and therefore defendant argued that § 504 did not apply. The Court rejected this argument, because § 504's "bar on employment discrimination should not be limited to programs that receive federal aid the primary purpose of which is to promote employment." —— U.S. ——, 104 S.Ct. at 1254.

*Rehabilitation Act of 1973—Handicapped Person*

Defendant's argument that, even if it is covered by § 504, plaintiff is not protected by the Rehabilitation Act as he is not a handicapped individual, is more successful. Again, this Court begins its inquiry by looking at the statute. Section 706(7)(B) of the Act states:

> The term "handicapped individual" means for purposes of subchapter IV and V of this chapter, any person who (i) has a physical or mental impairment

---

**4.** Title IX has been interpreted to have the same "program specific" funding requirement as § 504. The Supreme Court cited both *Grove City* and *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) (also dealing with Title IX) in deciding *Consolidated Rail.*

**5.** The Court itself noted that Title IX was not limited to only the administration of the federal student aid, as the College contended, but prevented discrimination in the administration of all student financial aid distributed by the College. 104 S.Ct. at 1221 n. 21.

which successfully limits one or more of such person's major life activities, (ii) is regarded as having such an impairment. For purposes of sections 793 and 794 of this title, as such sections relate to employment, such term does not include any individual whose current use of alcohol or drugs prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol or drug abuse, would constitute a direct threat to property or the safety of others.

29 U.S.C. § 706(7)(B); *accord* 45 C.F.R. § 84.3(j).

While the statute does not define any of the terms used in its definition, the regulations by the Department of Health and Human Services elaborate:

(i) "Physical or mental impairment" means (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

(ii) "Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

(iii) "Has a record of such an impairment" means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

(iv) "Is regarded as having an impairment" means (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by a recipient as constituting such a limitation; (B) has a physical or mental impairment that substantially limits major life activities only as a result of

the attitudes of others toward such impairment; or (C) has none of the impairments defined in paragraph (j)(2)(i) of this section but is treated by a recipient as having such an impairment.

45 C.F.R. § 84.3(j)(2).

Thus, there are three possible types of people who are considered handicapped: those who presently have some impairment substantially limiting a major life activity, those who have been so limited in the past, and those who are regarded by others as being so. Defendant argues that plaintiff has no such limitation or impairment and that it does not so regard plaintiff. It only regards plaintiff as not meeting the weight restriction. Plaintiff urges a broad interpretation of the term "handicapped" to include a person who is not "within the ordinary definition of that term" but "is perceived as such by an employer who has acted in a manner which precludes plaintiff from obtaining employment, notwithstanding the fact that he is in all other respects qualified to perform the requirements of the job." Plaintiff's opposition to Summary Judgment, 7–8.

Neither party cited any case dealing with the question of who is a handicapped person. Very few cases spend much time on the issue, as the issue usually requires little analysis. *See, e.g., Longoria v. Harris,* 554 F.Supp. 102 (S.D.Tex.1982) (amputee); *Grube v. Bethlehem Area School District,* 550 F.Supp. 418 (E.D.Pa.1982) (football player with kidney removed); *Vickers v. Veterans Administration,* 549 F.Supp. 85 (W.D.Wash.1982) (hypersensitivity to tobacco smoke required plaintiff to work in smoke-free environment); *Bey v. Bolger,* 540 F.Supp. 910 (E.D.Pa.1982) (hypertensive cardiovascular disease).

In defining who is a handicapped individual, § 504's "Catch 22" aspect appears: the plaintiff must first show that he or she has some impairment which substantially limits a major life activity, but this same plaintiff must show that he or she is not so handicapped as to be unable to perform the job. *See Doe v. Region 13 Mental Health-Mental Retardation Commission,* 704 F.2d

1402, 1408 n. 6 (5th Cir.1983); *Doe v. New York University*, 666 F.2d 761, 775 (2nd Cir.1981). This plaintiff, however, seeks to turn this difficulty on its head. He argues that because the weight restriction prevents him from obtaining a job, for which he would otherwise be qualified, the requirement transforms him into a handicapped individual as it is his body composition that prevents him from meeting this requirement. Plaintiff does not specify whether this constitutes a handicap under 706(7)(B)(i) or (ii).

There is, however, no authority for the proposition that failure to qualify for a single job because of some impairment that a plaintiff would otherwise be qualified to perform constitutes being limited in a major life activity. The regulations define major life activity as, *inter alia* "working," 45 CFR § 84.3(j)(2)(ii), but not "working at the specific job of plaintiff's choice." No court requires that an employee be prevented from all employment in order to be considered handicapped, and some courts are willing to define "major life activity" so that it is easily met. *E.g., Doe v. New York University*, 666 F.2d at 775 (major life activity limited when plaintiff unable "to handle stressful situations of the type faced in a medical training milieu") (court, nonetheless, reversed preliminary injunc-

tion); *Vickers v. Veterans Administration*, 549 F.Supp. at 87 (major life activity "capacity to work in environment which is not completely smoke free").

■ The only court to analyze the definition of handicapped status at any length is *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088 (D.Haw.1980), *vacated and remanded to administrative law judge for further findings*, Empl.Prac.Dec. ¶ 32,199, 26 Fair Empl.Prac.Cas. 1183 (D.Haw.1981). That court rejected the proposition that § 504 protects those capable of performing a particular job who is rejected because of a real or perceived physical or mental impairment. 497 F.Supp. at 1099. The court reasoned that that was not what Congress sought to accomplish with § 504 because "[i]f it were, Congress would not have used the terms *substantial* handicap or *substantially* limits—they (sic) would have said "any handicap to employment" or "in any way limits one or more such person's major life activities." *Id.* (emphasis in original). This court agrees with the portion of the *Black* court's decision [6] that the inability to obtain a single job does not render one "handicapped."

While aware that only one court has found a plaintiff not to be handicapped, *see GASP v. Mecklenburg County*, 42 N.C.

---

**6.** *Black* settled upon the test that a substantial handicap existed if the individual was disqualified from the same or similar jobs offered throughout the area to which the individual had reasonable access. 497 F.Supp. at 1101. Further, the court held that "In evaluating whether there is a substantial handicap to employment, it must be assumed that all employers offering the same job or similar jobs would use the same requirement or screening process." *Id.* at 1100.

The reason for this is that an employer with some aberrational type of job qualification (people with straight hair are inferior, and thus I require all job applicants to have curly hair) that screens out impaired individuals who are capable of performing a particular job, should not be able to say: "No one else has this job requirement, so the impairment does not constitute a substantial handicap to employment, and the applicant is not a qualified handicapped individual." If such an approach were allowable, an employer discriminating against a qualified handicapped individual would be rewarded if his reason for

rejecting the applicant were ridiculous enough.
*Id.*

This Court must respectfully disagree with its sister court on this point. Only if the employer's restriction or requirement discriminates against handicapped persons is it illegal, no matter how stupid or objectionable the restriction or requirement might be in general. Using the curly hair/straight hair example, unless plaintiff can demonstrate that curly hair is a common job requirement or that straight haired individuals are generally perceived as limited in some way, so that the plaintiff is handicapped, the curly hair requirement is not prohibited. Therefore, defendant is not evading § 504 by selecting ridiculous or arbitrary qualifications, and there is no need or justification for the *Black* court's decision to assume that all employers have the same arbitrary job requirements unless that is shown to be true. In the present case, plaintiff has not shown that he is barred from any job other than the job of United flight attendant.

App. 225, 256 S.E.2d 477 (1979) (nonsmokers harmed by tobacco smoke not handicapped) and cognizant that the definitions are generally to be read broadly, *see Doe v. New York University*, 666 F.2d at 775, this Court believes that there are limits to who can be considered handicapped and that these limits were exceeded by this case. A person who exceeded the maximum weight for a United flight attendant because he is an avid body builder is not limited in a major life activity—he is only prevented from having a single job.

Furthermore, plaintiff's "unique musculo-skelital system and body composition," as his motion papers describe his condition, are not the result of "physiological disorders," "cosmetic disfigurement," and "anatomical loss," 45 C.F.R. § 84.3(j)(2)(i). His weight and low fat content are self-imposed and voluntary. This distinguishes the present case from one in which the plaintiff's weight was involuntary—e.g., the result of a glandular problem. Only one court has considered whether § 504 protects an individual who is "voluntarily" handicapped. In *Davis v. Bucher*, 451 F.Supp. 791 (E.D.Pa.1978), the court held *past* drug users to be handicapped and that a city could not automatically disqualify them for past use. It recognized that the condition was voluntary, but held that such persons were still covered by § 504 because the Department of Health, Education and Welfare's analysis of the question argued that drug addiction was an impairment. *Id.* at 796. Therefore, the court did not proceed to analyze the effect of voluntariness, but only mentioned it as a factor which would otherwise have been relevant. The *Davis* court also noted that drug addiction was a serious problem and that Congress would want to assist those attempting to overcome their problem. *Id.* The only other court to touch upon the question of voluntariness found that where a person very sensitive to tobacco smoke may be handicapped, there was no discrimination where the plaintiff refused to either move his desk or close his office door. *See Vickers*, 549 F.Supp. at 89–90.

No such factors balance this plaintiff's choice to be a champion body builder. While good health is certainly a laudable goal, there is no indication that Congress intended to confer special protection upon body builders when it passed the Rehabilitation Act to protect the handicapped. The 1978 amendment to the Act gives additional indication that § 504 was not intended to protect those with voluntary "impairments" from employment discrimination as it specifically excepted some present drug and alcohol abusers from the definition of handicapped individual. *See* 29 U.S.C. § 706(7)(B). What plaintiff is really suing for is his right to be both a body builder and a flight attendant, a right that § 504 was not intended to protect.

■ Thus, this Court concludes that as a matter of law plaintiff is not a handicapped individual under § 504. Plaintiff has no physical impairment and is not substantially limited in any major life activity. Nor does defendant perceive plaintiff to have a physical impairment which limits his activities. Defendant merely regards plaintiff as not being under a certain weight. For the same reason that the failure to qualify for a single job does not constitute a limitation on a major life activity, refusal to hire someone for a single job does not in and of itself constitute perceiving the plaintiff as a handicapped individual. If this were the case, then anyone who failed to obtain a job because of a single requirement which may not be essential to the job would become a handicapped individual because the employer would thus be viewing the applicant's failure as a handicap. This Court refuses to make the term handicapped a meaningless phrase.

■ Lastly, it must be observed that the fact that there may be no good, logical or medical justification for the defendant's weight program, as plaintiff contends, does not affect the analysis at all.[7] For good or

---

**7.** As Judge Pratt found in *Alpa:*

[D]etermination of the specific amount of an exception to be granted a flight attendant is,

evil, private employers are generally free to be arbitrary and even capricious in determining whom to hire, unless the employer somehow discriminates on the basis of race, national origin, alienage, age, sex, or handicap status, considerations which Congress has determined to be prohibited. But it is only after the employment qualification or policy has been found to have some impact upon a member of a protected group that the defendant is required to justify that requirement or policy.

### *Rehabilitation Act of 1973—Statute of Limitations*

Defendant contends that a three-year statute of limitations applies to § 504 suits, adopting California's three-year limitations statute prescribed for actions founded upon a liability created by statute. *See* Cal.Civ. Pro.Code § 338. Plaintiff concurs. Defendant, however, argues that plaintiff's cause of action accrued on October 9, 1980 when he was originally discharged for being overweight. Plaintiff argues that the limitations period does not begin to run until he applied and was rejected in December 1983, and thus is within the period.

As the Court has determined that plaintiff is not included within § 504's ambit, it does not reach the question whether a plaintiff who has *reapplied* for a job from which he was originally fired has a new cause of action that may be within the limitations period, even if the termination is barred. This Court notes, however, that the case upon which defendant principally relies actually distinguishes between a request for reinstatement and an application for employment. *See Collins v. United Air Lines*, 514 F.2d 594, 596–97 (9th Cir. 1975) (quoting *NLRB v. Textile Machine Works*, 214 F.2d 929, 932 (3d Cir.1954). While a request for reinstatement is not a new and separate violation, application for employment which is refused is a separate and distinct act. *Id.* The Ninth Circuit,

however, has only applied *Collins* in cases concerning requests for reinstatements, rather than cases in which termination has been followed by a new application.

### CONCLUSION

There is no material fact at issue. Defendant is entitled to summary judgment as a matter of law as plaintiff is not a handicapped individual protected by § 504. Accordingly, this Court orders that summary judgment be granted in favor of defendant, that judgment in its favor be entered, and that defendant recover of plaintiff its costs of action.

---

from a medical standpoint, arbitrary and without solid medical basis.... Because the "exception" policy was without solid medical foundation, United's medical director directed that information from a private physician supporting a requested exception be elicited from a lay person rather than by the United medical director, "in order to keep me from appearing medically stupid to my peers." 26 Fair Emp.Prac.Cases at 615.