Michael F. BAUER, Appellant,

v.

REPUBLIC AIRLINES, INC.,
Respondent.

No. C3-89-165.

Court of Appeals of Minnesota.

July 3, 1989.

Review Denied Aug. 25, 1989.

William J. Mavity, James G. Ryan, Mavity & Ryan, Minneapolis, for appellant.

R. Scott Davies, Nancy J. Wolf, Briggs and Morgan, Minneapolis, Timothy R. Thornton, Vice President and Gen. Counsel,

Northwest Airlines, St. Paul, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Michael Bauer was denied a pilot position with respondent Republic Airlines in 1979 due to his poor eyesight. Bauer filed a discrimination charge against Republic which was dismissed by the Minnesota Department of Human Rights in 1984. Bauer brought the present action against Republic in district court. Republic's motion for summary judgment was granted and Bauer appeals.

## FACTS

In 1979, appellant Michael Bauer applied for a pilot position with North Central Airlines, later known as respondent Republic Airlines, Inc. (herein "Republic"). In late February, 1979, Bauer was interviewed for the position and on May 4–5, 1979, he underwent a physical examination. The physician determined that Bauer's uncorrected vision was less than 20/200. Republic preferred that its pilots have 20/20 uncorrected vision. As a result of his vision test, Bauer did not pass his physical exam and was no longer considered for the position. In 1979, Bauer's uncorrected vision automatically prevented his employment as a pilot with most major commercial airlines.

Between May 1977, and September 1979, Bauer also applied to and was denied an interview by United, Ozark, Piedmont, Delta and American airlines, three of which had vision standards Bauer could not meet. Bauer was hired by Air Wisconsin in September of 1979 and has been employed by that airline as a commercial pilot through the present time. Bauer estimated that his income with Air Wisconsin was about one-third of the income he would have made with Republic. He has flown as a charter pilot with three different companies between May 1977 and September 1979.

In August 1979, Bauer filed a disability discrimination charge with the Minnesota Department of Human Rights (Department), claiming that Republic's refusal to hire him violated the Minnesota Human Rights Act. On December 18, 1984, the Department dismissed the charge of discrimination.

In January 1985, Bauer brought suit against Republic pursuant to Minn.Stat. § 363.14, subd. 1 (1984).[1] Republic moved for summary judgment which the trial court granted and judgment was entered dismissing Bauer's claim on November 3, 1988.

## ISSUES

1. Did the trial court err in using the definition of "handicapped person" contained in 29 U.S.C. § 706(7)(B) to interpret Minn.Stat. § 363.01, subd. 25 (1978)?

2. Does Bauer's vision substantially limit his ability to work?

3. Is Bauer regarded by employers in the aviation industry as having a handicap as a result of his poor vision?

## ANALYSIS

On appeal from summary judgment, this court must determine whether there are genuine issues of material fact and whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota Hospitals & Clinics,* 426 N.W.2d 425, 427 (Minn.1988).

Appellant claims that Republic violated the Minnesota Human Rights Act (MHRA), when it refused to hire him as a pilot. The MHRA reads as follows:

Except when based on a bona fide occupational qualification, it is an unfair employment practice:

1. Minn Stat. § 363.14, subd. 1 (1984) reads in pertinent part:

A person may bring a civil action seeking redress for an unfair discriminatory practice: * * * (b) Notwithstanding the provisions of

any law to the contrary, (1) within 45 days after the commissioner has * * * determined that there is no probable cause to credit the allegations contained in a charge filed with the commissioner.

* * * (2) For an employer, because of * * *, disability, * * *, (a) to refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment;

Minn.Stat. § 363.03, subd. 1(2)(a) (1978).

At the time of Bauer's employment application, "disability" was defined as "a mental or physical condition which constitutes a handicap." Minn.Stat. § 363.01, subd. 25 (1978). (hereinafter, "Minnesota definition"). The trial court found that appellant's eyesight did not constitute a handicap and, therefore, appellant was not disabled.

1. In determining that appellant was not handicapped, the trial court used the definition of "handicapped individual" provided in section 7 of the Rehabilitation Act of 1973, 87 Stat. 359, as amended, 29 U.S.C. § 706(7)(B) (hereinafter, "federal definition"):

> * * * any person who (i) has a physical or mental impairment which *substantially* limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment * * *.

(emphasis added). The trial court found that appellant had a physical impairment but that appellant's impairment did not "substantially limit his major life activity of working * * *."

Bauer argues that the trial court erred in using the federal definition of a "handicapped individual" because unlike the federal definition, the 1979 Minnesota definition of "disability" did not require that Bauer's handicap be a substantial limitation in obtaining employment. Bauer argues instead that this court should adopt a common-use definition of the term "handicapped".

■ In deciding whether Bauer has a disability within the meaning of Minn.Stat. 363.01, subd. 25 (1978), this court must ascertain the intent of the legislature. Minn.Stat. § 645.16 (1988). This court may look to other statutes on the same or similar subjects for aid in ascertaining the legislature's intent. Minn.Stat. § 645.16, subd. (5) (1988).

■ The definition of "disability" at issue in the present case is not the same definition interpreted in *State By Cooper v. Hennepin County*, 441 N.W.2d 106 (Minn. 1989). In that case, the court was guided by federal law in construing the 1983 Minnesota definition of "disability" which was identical to the federal definition.

Nonetheless, in construing the MHRA prior to *State By Cooper v. Hennepin County*, the Minnesota Supreme Court has applied principles developed through adjudication of claims arising under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq. (1976). *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 441 (Minn.1983); *Sigurdson v. Isanti County*, 386 N.W.2d 715, 719. (Minn. 1986). 42 U.S.C. § 2000e is entitled "Equal Employment Opportunities."

> Chapter 363 appears to be modeled after Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e, et seq. (citations omitted). The language of 42 U.S.C.A. § 2000e, is remarkably similar to that of Minn.St. c. 363.

*Danz v. Jones*, 263 N.W.2d 395, 398–99 (Minn.1978).

Minnesota courts have long been guided by federal law in construing the MHRA. In the present case, the trial court appropriately used the federal definition of a "handicapped individual" in determining whether appellant is disabled within the meaning of the MHRA.

■ 2. Under the federal definition of a "handicapped individual," Bauer must establish that his physical impairment substantially interfered with a major life activity. 29 U.S.C. § 706(7)(B)(i). In the present case, that activity is working.

The Minnesota Supreme Court recently addressed the issue of determining whether a physical impairment substantially limited employability in *State By Cooper v. Hennepin County*, 441 N.W.2d at 112, 113. In that case, appellant Tervo was denied a position as detention deputy with Hennepin County because his eyesight did not meet Hennepin County's vision requirements.

The supreme court adopted the analysis of *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088 (D. Hawaii 1980), which outlined several factors to be considered in determining whether a qualified applicant had an impairment that substantially limited the applicant's employment:

(a) number of employers affected by the criteria,

(b) types of jobs to which the criteria apply,

(c) geographical area to which the applicant has access,

(d) applicant's job expectations and training.

*Black*, 497 F.Supp. at 1100–1101.

In applying the *Black* factors, the court rejected Tervo's argument that the denial of one specific job, due to his poor eyesight, rendered him a disabled person. The court relied on *Tudyman v. United Airlines*, 608 F.Supp. 739 (D.C.Cal.1984) in which an applicant who was denied a position as a flight steward because his weight was greater than that permitted by the airline filed a discrimination suit against the airline. The district court found the applicant did not have a handicap, stating:

There is, * * *, no authority for the proposition that failure to qualify for a single job because of some impairment * * * constitutes being limited in a major life activity. The regulations define major life activity as, *inter alia*, "working," 45 CFR § 84.3(j)(2)(ii), but not "working at the specific job of plaintiff's choice."

*State By Cooper v. Hennepin County*, 441 N.W.2d at 111 (quoting *Tudyman*, 608 F.Supp. at 745.)

Applying the *Black* analysis to the present case, the record indicates that Bauer's vision disqualified him from employment as a pilot by most major commercial airlines operating in 1979. However, Bauer's eyesight does not prevent all commercial airlines from hiring him as a pilot and he is employed as a pilot for Air Wisconsin. Bauer has been denied one single job within the occupational field of pilot. Pursuant to the rule in *State By Cooper v. Hennepin County*, Bauer's employability

is not substantially limited by his eyesight and therefore, he has no disability as defined by the MHRA, Minn.Stat. § 363.01 subd. 25 (1978).

■ 3. Finally, Bauer contends that he is regarded by the major airlines as having a handicap pursuant to 29 U.S.C. § 706(7)(B)(iii). *State By Cooper v. Hennepin County* addressed this argument:

The Department argues Hennepin County perceived Tervo as possessing a disabling condition which substantially limited his ability to see. In reality, however, Hennepin County simply stated that Tervo failed to meet its uncorrected vision standard of 20/100. Hennepin County was aware that with glasses Tervo's vision could be corrected to 20/15. Therefore it did not perceive him as being substantially limited in his ability to see. This case differs significantly from one involving a blind person or other individual whose visual problems are uncorrectable. Hennepin County's decision not to hire Tervo was not based on its perception of him as disabled, but rather on his failure to meet a job qualification necessary to protect the safety of employees and prisoners.

*State By Cooper v. Hennepin County*, 441 N.W.2d at 112.

The court noted the public policy supporting its finding as stated in *Tudyman*:

[R]efusal to hire someone for a single job does not in and of itself constitute perceiving the plaintiff as a handicapped individual. If this were the case, then anyone who failed to obtain a job because of a single requirement which may not be essential to the job would become a handicapped individual because the employer would thus be viewing the applicant's failure as a handicap. This Court refuses to make the term handicapped a meaningless phrase.

*State By Cooper v. Hennepin County*, 441 N.W.2d at 113 (quoting *Tudyman*, 608 F.Supp. at 746.)

Republic did not perceive Tervo as having a handicap; he merely failed its vision requirement. Bauer's poor vision does not

qualify him as a disabled person under the MHRA.

## DECISION

Although Minn.Stat. § 363.01 subd. 25 (1978) does not contain language identical to that of 29 U.S.C. § 706(7)(B), it is appropriate to follow federal law in ascertaining the Legislature's intent in determining the definition of "handicap". Appellant Bauer was refused a pilot's position with one airline, Republic, due to his eyesight. Denial of one particular type of job does not amount to a substantial interference with his ability to work as a pilot, nor does it mean he is regarded as having a handicap.

Affirmed.