**Doretha F. SMAW, Plaintiff,**

v.

**COMMONWEALTH OF VIRGINIA DEPARTMENT OF STATE POLICE, Defendant.**

**Action No. 2:94CV311.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 8, 1994.

---

Harold Barnes, Barnes, Faulcon, McKenna & Kithcart, Suffolk, VA, for plaintiff.

Neil Anthony Gordon McPhie, Guy Winston Horsley, Jr., Office of the Atty. Gen., and James Stuart Gilmore, III, Atty. Gen. of Virginia, Richmond, VA, for defendant.

## OPINION AND ORDER

MILLER, United States Magistrate Judge.

Former Virginia State Trooper Doretha Smaw has filed two federal claims against the Commonwealth of Virginia, Department of State Police (VSP). Both of Smaw's claims are based on employment discrimination, and both relate to her dismissal due to her obesity. The Virginia State Police have moved for summary judgment. The core issues in deciding this motion are whether, by reason of her obesity, Smaw is "handicapped" under the Rehabilitation Act or has a "disability" under the Americans with Disabilities Act, and, alternatively, whether the VSP regarded her as either handicapped or disabled.

This matter comes before the Court on Defendant's Motion for Summary Judgment, filed on July 25, 1994. Smaw filed a response and brief in opposition on August 4, 1994, and a supplemental response on August 26, 1994. Both parties have consented to have all proceedings in this case conducted before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73. The undersigned heard oral arguments on this matter on Tuesday, August 23, 1994. After a review of the memoranda submitted by the parties, and the ap-

plicable statutory and case law, the Court GRANTS the summary judgment motion of Defendant Commonwealth of Virginia, Department of State Police.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Doretha Smaw was first employed as a Virginia State Trooper in 1982. Compl. ¶ 2. At the time of her hiring, she weighed 219 pounds. Blankenship Aff. ¶ 7. Although Smaw's weight exceeded the maximum weight allowable under the personnel guidelines of the VSP, she was accepted as a trooper with the understanding · that she would reach the appropriate weight during her employment. *Id.*

During her nine-year tenure as a trooper, Smaw received numerous written warnings from her supervisors about the fact that her weight remained in excess of the maximum weight limitation. Compl. ¶ 15–66. In August of 1988, Smaw was examined by a VSP doctor, who found that no medical reason prevented her from reaching the prescribed weight. Def.Mem.Supp.Summ.J. ¶ 3b. The doctor suggested several ways for Smaw to attain the desired weight, and recommended that she lose three pounds per month until she reached a satisfactory weight. *Id.*

Pursuant to that program, Smaw was weighed monthly. Smaw was consistently unable to meet the three-pound-per-month program, and, in 1991, she was terminated from employment as a trooper. *Id.* at ¶ 3c. Smaw was permitted to retain employment with the VSP as a dispatcher, a position she currently holds. *Id.*

Smaw has filed two claims against the VSP, one under the Rehabilitation Act of 1973, and the second under the Americans with Disabilities Act of 1990.

## II. STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Facts are deemed material if they might affect the outcome of the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. *Id.*

In deciding a summary judgment motion, the court must view the record as a whole and in the light most favorable to the non-moving party. *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). Either party may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or rebut a summary judgment motion. Fed. R.Civ.P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. *Id.* at 56(e). Furthermore, the party moving for summary judgment need not supply "affidavits or other similar materials negating the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. When a motion for summary judgment is made and supported with affidavits as it is in this case, however, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e).

Rule 56 mandates a grant of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. *Id.* at 324, 106 S.Ct.

at 2553 (quoting Fed.R.Civ.P. 56(e)). Considering these controlling principles, the Court turns to the merits of the motion.

## III. ANALYSIS

### A. The Rehabilitation Act of 1973

Smaw's first claim is founded on the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., federal legislation designed to deter discrimination on the basis of disability by all federally funded private or public entities.

The Rehabilitation Act defines the term "handicapped" in two ways. First, there is the more commonplace definition: A person having a physical or mental impairment which substantially limits one or more of such person's major life activities. § 706(7)(B)(i). Second, and also germane to this case, the Act considers an individual to be handicapped if that person is *regarded by the employer* as having such an impairment. § 706(7)(B)(iii). The regulations define "one who is regarded as impaired" as having:

> a physical or mental impairment that does not substantially limit major life activities, but is treated by a covered entity as constituting such limitation; has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others towards such impairments; or has none of the impairments ... but is treated by a covered entity as having as substantially limiting impairment. 29 C.F.R. § 1630.2(*1* ).

Thus, the Rehabilitation Act covers not only people who are in fact disabled, but those who are discriminated against because their employers view them as disabled. The latter variety are commonly referred to as "perceived disability" cases. Smaw has chosen to proceed on both an actual disability and a perceived disability theory.

■ As a general rule, in handicap discrimination cases brought under federal law, the claimant bears the burden of proving each element of her claim. *See Joyner v. Dumpson,* 712 F.2d 770, 774 (2d Cir.1983). It is axiomatic that in order to invoke the Rehabilitation Act in either an actual or a perceived disability case, the plaintiff must establish that she is a handicapped person

within the purview of the statute. In order to qualify as handicapped under the statutory definition, Smaw must show that she was discriminated against because she had, or was regarded by her employer as having, (1) a physical or mental impairment; (2) that limits a major life activity; and (3) the limitation is substantial.

#### 1. Physical or Mental Impairment

■ The regulations governing the Rehabilitation Act define "physical or mental impairment" as including any physiological disorder or condition significantly affecting a major bodily system. 45 C.F.R. § 84.3(j)(2)(i)(A). The regulations are open-ended, encompassing disorders and conditions "whose precise nature is not at present known." *Id.* at App. A, Subpart A(3). There are no cases dealing with the specific issue of whether obesity qualifies as a "physical or mental impairment." Judging from the variety of other situations that have been designated as handicaps by the courts—*see, e.g., Severino v. North Fort Myers Fire Control Dist.,* 935 F.2d 1179, 1182 (11th Cir.1991) (AIDS); *Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511, 517 (2d Cir.1991) (drug abuse); *Gilbert v. Frank,* 949 F.2d 637, 641 (2d Cir.1991) (kidney disease); *Reynolds v. Brock,* 815 F.2d 571, 573 (9th Cir.1987) (epilepsy); *Gallagher v. Catto,* 778 F.Supp. 570, 577 (D.D.C.1991) (alcoholism) aff'd 988 F.2d 1280 (D.D.Cir.1993)—and from the recent decision of the First Circuit Court of Appeals implying that medically dysfunctional metabolism leading to morbid obesity could be a physical impairment, *Cook v. Rhode Island Dept. of Mental Health, Retardation, and Hospitals,* 10 F.3d 17 (1st Cir. 1993), one must conclude that the definition of "physical impairment" is far-reaching. Nonetheless, as the Fourth Circuit Court of Appeals has recognized, "[t]he question of who is a handicapped person under the Act is best suited to a 'case-by-case determination' ... The definitional task cannot be accomplished merely through abstract lists and categories of impairments." *Forrisi v. Bowen,* 794 F.2d 931, 933 (4th Cir.1986), quoting *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1100 (D.Hawaii 1980). Thus it remains

unclear whether simple obesity falls within the broad sweep of the definition of physical impairment.

2. Major Life Activity

The regulations implementing the Rehabilitation Act define "major life activities" to include such functions as caring for oneself, performing manual tasks, seeing, hearing, and working. 29 C.F.R. § 1613.702(c). Because working is included on the illustrative list, there is no question as to whether it qualifies as a major life activity. A claim of interference with a chosen occupation forms the crux of this dispute, and thus this prong of the definition appears to be satisfied by Smaw's claim. However, as the next section of this opinion illustrates, that the regulations define major life activity to include working does not necessarily mean working at the job of one's choice.

3. Substantial Limitation

[redacted] The term "substantially limits" is not defined in the regulations. Some guidance in interpreting this phrase can perhaps be found in the regulations implementing the ADA. Those regulations include the statement that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Cases defining "substantially limits" as it appears in the Rehabilitation Act make it clear that the ADA regulation represents an accurate definition of the phrase.

Case law in this area provides some significant guidance as to the meaning of "substantially limits." In a case involving a repairman who was afraid of heights, the Fourth Circuit insisted that "an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Forrisi,* 794 F.2d at 934 (citing *de la Torres v. Bolger,* 610 F.Supp. 593, 597 (N.D.Tex.1985); *Tudyman v. United Airlines,* 608 F.Supp. 739 (C.D.Cal.1984); *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088 (D.Hawaii 1980)). The Sixth Circuit stands in accord, stating that "an impairment that interfered with an individual's ability to do a particular job, but did not significantly decrease that individual's ability to obtain satisfactory employment otherwise, was not *substantially* limiting within the meaning of the statute." *Jasany v. United States Postal Service,* 755 F.2d 1244, 1248 (6th Cir.1985) (cited with approval by *Welsh v. Tulsa,* 977 F.2d 1415, 1418 (10th Cir.1992)).

Most significantly, the First Circuit recently decided a perceived disability case dealing directly with the factual scenario of obesity. *Cook,* 10 F.3d at 17. While this decision upheld a verdict for the obese plaintiff, the court's analysis makes clear that the employer must regard the individual's disability as the type that would defeat many or all kinds of employment.

> [D]enying an applicant even a single job that requires no unique physical skills, due solely to the perception that the applicant suffers from a physical limitation that would keep her from qualifying for a broad spectrum of jobs, can constitute treating an applicant as if her condition substantially limited a major life activity, viz., working. *Id.* at 25.

The court in *Cook* thus takes a narrow view of the type of discrimination necessary to violate the statute, noting that the employer must view the individual as unqualified for more than just the single job denied; the gist of the definition requires that the employer see the individual as unqualified for an array of occupations.

In rejecting the employer's appeal, the First Circuit also distinguished other cases involving failure to qualify for a job possessing unique qualifications, noting that

> there is a significant legal distinction between rejection based on a job-specific perception that the applicant is unable to excel at a narrow trade and a rejection based on a more generalized perception that the applicant is impaired in such a way as would bar her from a large class of jobs. *Id.* at 26.

In the former type of case, courts have uniformly held that the employer's actions did not violate the law. *See, e.g., Daley v. Koch,* 892 F.2d 212, 214–16 (2d Cir.1989) (sustaining rejection as a police officer because of

personality traits of poor judgment and responsibility); *Welsh,* 977 F.2d at 1417–18 (upholding termination as a fire fighter due to minor sensory loss in one hand); *Tudyman,* 608 F.Supp. at 746 (sustaining termination as airline steward due to bodybuilder's bulk).

The courts have differentiated between an employer's rejection of an employee or potential employee due to a perception that the individual is unable to perform the duties of that job, and denial because the employer believes the individual is inherently incapable of working at any of a number of jobs; the latter may qualify as handicapped under the statute, while the former cannot.

Therefore, under the actual disability component of the Rehabilitation Act, even if a plaintiff is able to demonstrate that obesity qualifies as a "mental or physical disability," and that working qualifies as a "major life activity," she must also show that her disability "substantially limits" her ability to work. As the regulations imply, and as the cases make exceedingly clear, disqualification from one particular job does not meet the substantiality requirement of the law. Even in the one case where a plaintiff successfully asserted obesity discrimination as the basis for her claim, the court took great pains to demarcate its holding, expressly excluding situations where an employer takes action against an employee because of job-specific concerns.

Under the "regarded as" prong of the Rehabilitation Act, a plaintiff can make out a cognizable perceived disability claim by demonstrating that she was treated by her employer as if she had an impairment that substantially limits a major life activity. Case law on the perceived disability component of the Rehabilitation Act, while scant, demonstrates that disqualification from one particular job also does not meet the substantiality requirement.

### B. The Americans with Disabilities Act of 1990

The Americans With Disabilities Act, 42 U.S.C. 12101 et seq., extends protection against discrimination against disability into the private sector. By design, the ADA standards mirror those of the Rehabilitation Act in this case.[1] Indeed, the Rehabilitation Act regulations' definition of "handicapped" and the ADA and the ADA regulations' definition of "disability" are substantially identical.[2] The three requirements set forth in the previous sections, physical impairment, major life activity, and substantial limitation, are repeated verbatim in the ADA. § 12102(2).

In one significant decision involving the ADA, the court followed the trend established by prior courts' interpretations of the Rehabilitation Act. The case involved an overweight flight attendant, and the court granted summary judgment on the perceived disability claim, stating that

> working as a flight attendant is just one particular job with defendant [Airline], and thus does not qualify as a substantial limitation of a major life activity under the ADA. In fact, the record indicates that plaintiff failed to pursue opportunities for ground positions offered by defendant. *Horton v. Delta Air Lines,* 1993 WL 356894, 1993 US Dist. LEXIS 12865 (N.D.Cal.1993).

The emergence of the ADA does not create a new avenue for claims in the area of disability discrimination; rather, the ADA incorporates the existing language and standards of the Rehabilitation Act in this area.

In addition, specific regulations for the ADA indicate that generally obesity does not qualify as a disability. The Interpretive Guidance created by the Equal Employment

---

1. Despite minor differences in language, the ADA covers the same individuals that are covered under the Rehabilitation Act, but expands the scope of employers covered. The Senate and House Committees explicitly recognized that "[t]he ADA incorporates many of the standards of discrimination set out in regulations implementing section 504 of the Rehabilitation Act." H.R.Rep. No. 485, 101st Cong., 2d Sess., pt. 2 at 66 (1990); S.Rep. No. 116, 101st Cong., 1st Sess.

2 (1989), U.S.Code Cong. & Admin.News 1990, 267, 304, 348–49.

2. Congress selected the term "disability" for the ADA rather than "handicap" as used in the Rehabilitation Act, not because of any difference in meaning, but because the former term is less stigmatizing to disabled persons. S.Rep. No. 116, supra note 1.

Opportunity Commission on Title I of the ADA states that "except in rare circumstances, obesity is not considered a disabling impairment." 29 C.F.R. § 1630 App. The case law and the regulations both point unrelentingly to the conclusion that a claim based on obesity is not likely to succeed under the ADA.

### C. Ms. Smaw's Claims

█ In order to prevail on either of her claims, Smaw must show that either her obesity "substantially limits" her ability to hold any job, or that the Virginia State Police regard this as being the case. Smaw has offered no evidence that she is substantially limited by her obesity. Her present position as a dispatcher would seem to negate any argument that she is disqualified from her profession by her weight. Her claim of actual disability or handicap must therefore fail.

█ Similarly, Smaw has not shown that the VSP regard her as incapable of performing duties in her chosen occupation. Unlike the victorious plaintiff in *Cook*, Smaw has not demonstrated that VSP perceives her as unable to perform duties in the field of law enforcement. Although Smaw has argued for a narrower view of her profession, contending that her employer views her as unable to perform in active law enforcement jobs, this Court finds that the proper scope of Smaw's occupation is the field of law enforcement as a whole. Therefore, because Smaw is presently employed in her field, and because her employer has given no indication that it views her as unable to work as a law enforcement officer, she is not substantially limited as required by both the Rehabilitation Act and the ADA.

The decision in *Forrisi* expressly delineates the Fourth Circuit's position on the "substantially limits" prong of the definition of handicapped, and Smaw's allegations undoubtedly place her beyond the situations protected by the Rehabilitation Act. Because the relevant provisions of the ADA merely repeat the language of the Rehabilitation Act, Smaw's claims will fall short under either the ADA or the Rehabilitation Act.

The specific grounds given by the VSP for Smaw's reclassification, that being a trooper requires the physical skills of being able to protect oneself from assault, and to pursue, confront, and capture offenders, appear to be founded in job-specific concerns. Given that the VSP have merely reclassified Smaw from a trooper to a dispatcher based on reasons rationally related to her ability to perform her duties, she will not be able to make this required showing that the VSP perceived her disability as foreclosing a broad range of employment opportunities.

There are no factual issues in dispute; all the parties agree that Smaw was demoted because of her weight, and thus the typical questions of motive in employment discrimination cases cannot save this case from summary judgment. The decision on Smaw's claims turns on the narrow question of the legal definition of terms within the statute, and the cases are uniform in their treatment. Smaw simply does not qualify for protection under either the Rehabilitation Act or the ADA. Even assuming that Smaw's obesity is a physical impairment, it is not the type of impairment which substantially limits her ability to pursue employment, and there is no indication that her employer perceived it as such. Therefore, Smaw cannot meet a required element of an employment discrimination claim under either the Rehabilitation Act or the ADA; she cannot prove that she is "handicapped" or "disabled" as required by the Rehabilitation Act and the ADA, respectively.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that the movant's request for summary judgment must be honored. Therefore, the Court GRANTS Defendant's Motion for Summary Judgment and ORDERS the Clerk to enter judgment in favor of the Defendant.