David BROWN, Plaintiff

v.

CONTINENTAL BAKING
CO., Defendant.

Civ. A. No. 93–5905.

United States District Court,
E.D. Pennsylvania.

July 7, 1995.

Marshall L. Williams, Philadelphia, PA, for plaintiff.

Richard E. Ruffee, Francis J. Connell, III, Drinker Biddle & Reath, Philadelphia, PA, Richard S. McConnell, Jr., Labor Counsel, St. Louis, MO, for defendant.

*Explanatory Order*

ANITA B. BRODY, District Judge.

Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56. After considering the facts in the light most favorable to the plaintiff I will grant the motion in part and deny it in part for the following reasons. Plaintiff also moves to strike defendant's motion for summary judgment, I will deny this motion.

## I. ERISA

Plaintiff seeks to recover benefits under the terms of his Plan for health, dental, disability and life insurance coverage for him and his children under § 1132(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*[1] Defendant moves for summary judgment because Continental Baking Company (CBC) is an improper defendant, and plaintiff has failed to exhaust his administrative remedies. I will grant summary judgment on the ERISA claims for the following reasons.

█ 1. Plaintiff fails to articulate or offer evidence as to why he is entitled to the benefits he claims. It is evident from the agreement between the Union and defendant that there is a benefits plan for union members in existence (Pl. Exh. A–3, Agreement between Bakery Confectionery & Tobacco Workers Union Local # 6 (the Union) and Continental Baking Company, Article XIV Welfare and Pensions), but plaintiff has provided no evidence regarding the Plan and the benefits he is entitled to under it.[2]

2. In an action to recover benefits under § 1132(a)(1)(B) the proper defendant is either the Plan itself or a fiduciary of the Plan. *See Curcio v. John Hancock Mutual Life Ins. Co.*, 33 F.3d 226, 232–234 (3d Cir.1994). Defendant is neither the Plan (See Pl. Exh. A–3 establishing the Plan) nor a fiduciary.[3]

---

1. Section 1132(a)(1)(B) reads as follows:
   (a) **persons empowered to bring a civil action**
   A civil action may be brought—
   (1) by a participant or beneficiary—
   (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan
   An employee welfare benefit plan is defined as follows at 29 U.S.C. § 1002(1):
   The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefits described in section 186(c) of this title (other

than pensions on retirement or after death, and insurance to provide such pensions).

2. Plaintiff has included among his submissions a Summary Plan Description of the Union's Members' Assistance Program (Pl. Exh. A–2) (the Program) which is a service that provides assistance to participants experiencing personal problems that are affecting their work performance. The three benefits provided under the Program are: evaluations, referral services, and counselling (Pl. Exh. A–2 pp. 3–4). Included with the Summary Plan Description for the Program is a letter from the Trustees of the Program which explicitly states that the Program is not a health benefits plan. Furthermore, the Program does not mention to what health, dental, disability or insurance benefits a member of the Union is entitled. Therefore, although plaintiff asserts that he has included the Plan, and refers the Court to the Program, it is clear that the Program is not the Plan and that he has not included the Plan among his submissions.

3. Under ERISA:
   [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discre-

■ In support of its contention that it is not a fiduciary defendant offers the affidavit of CBC's personnel director that during plaintiff's employment his insurance, welfare and pension benefits were administered by Union Funds and not by CBC (Def. Exh. 1, Nancy Hudson Affidavit ¶¶ 5–9). Plaintiff has provided no evidence that CBC is a fiduciary of the Plan. The only evidence indicates that Trustees administer the Funds and the Program. (Pl. Exh. A–2, p. 3).

■ 3. Plaintiff has failed to exhaust his administrative remedies, *Weldon v. Kraft, Inc.*, 896 F.2d 793 (3d Cir.1990); *Wolf v. National Shopmen Pension Fund*, 728 F.2d 182, 185 (3d Cir.1984), nor has he shown that he was threatened with irreparable harm, that resorting to administrative remedies would be futile, or that he was refused meaningful access to the Plan's administrative procedures. *Tomczyscyn v. Teamsters, Local 115 Health and Welfare Fund*, 590 F.Supp. 211, 213 (E.D.Pa.1984). Plaintiff contends that he did not file an appeal because to do so would have been futile, an admission that he failed to exhaust his administrative remedies. In order to merit waiver of the exhaustion requirement a claimant must provide not merely "bare allegations of futility," but a "clear and positive showing of futility." *Canale v. Yegen*, 782 F.Supp. 963, 972 (D.N.J. 1992) (quoting *Makar v. Health Care Corp. of Mid–Atlantic (Carefirst)*, 872 F.2d 80, 83 (4th Cir.1989)). Plaintiff has made no such showing here.

## II. Americans With Disabilities Act

Plaintiff brings his disability discrimination claim under § 12112(b)(5)(A) of the American with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* He alleges that he was terminated for absences attributable to his seeking help in alcohol rehabilitation. Defendant moves for summary judgment on the ground that the ADA was not yet in effect on the date that plaintiff's cause of action accrued. I agree with defendant's position and will grant summary judgment on the ADA claim.

■ The ADA became effective on July 26, 1992. Plaintiff does not challenge the proposition that the ADA should not be applied retroactively, but argues that his termination did not become final until after he followed the grievance procedure. Termination decisions, however, are not tentative or non-final merely because a grievance procedure exists after discharge. *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 505–06, 66 L.Ed.2d 431 (1980); *International Union of Electrical, Radio and Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 234–235, 97 S.Ct. 441, 446, 50 L.Ed.2d 427 (1976).[4] The parties agree to the following:

— On July 13, 1992, plaintiff met with Nancy Hudson, the personnel director, Miro Culic, the head of the Engineering department, and Richard Bradbury, the Shop Steward. During the meeting Nancy Hudson terminated plaintiff's employment for violation of its attendance program (Pl. Exh. B–11, David Brown's Grievance Form, Def. Exh. 1, Nancy Hudson Affidavit).

— On July 14, 1992, Nancy Hudson sent plaintiff a notice that his employment was terminated as of July 13, 1992 (Pl. Exh. B–14).

— On July 15, 1992, plaintiff filed a grievance with the Union regarding his termination (Pl. Exh. A–11).

— On August 28, 1992, Nancy Hudson sent a memo to Tom Logan the Union representative stating that defendant's final position on plaintiff's termination had not changed (P. Exh. C–2).

tionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
29 U.S.C. § 1002(21)(A).

4. The grievance proceedings could be challenged as being discriminatory or discriminatorily applied, *See E.E.O.C. v. Hall's Motor Transit Company*, 789 F.2d 1011 (3d Cir.1986), but plaintiff has made no such contention.

— On October 30, 1992, Floyd Calaway the plant manager sent a memo to Tom Logan the Union representative stating that plaintiff's termination would stand (Pl. Exh. A–10).

As agreed upon, plaintiff was terminated on July 13, 1992, prior to the effective date of the ADA; the grievance procedure ended on October 30, 1992. Since plaintiff's pursuit of his rights under the grievance procedure does not change the termination date, which is prior to July 26, 1992, plaintiff has no ADA claim under the act.

## III. Title VII Claims

### A. Disparate Treatment

I will deny the motion for summary judgment on the disparate treatment claim.

■ 1. Defendant contends that plaintiff, an African American male, has failed to make out a prima facie case because he was not qualified for the position due to his number of absences under the Attendance Control Program. Plaintiff, however, has produced some evidence that the Attendance Control Program was discriminatorily applied, and that white employees in violation of the Attendance Control Program were not terminated (Pl. Exhs. B & D). By doing this plaintiff has survived the prima facie threshold on qualification for the position.

2. Defendant rebuts the prima facie case by articulating that plaintiff was terminated for violating the Attendance Control Program.

3. Plaintiff must now show pretext. *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1995).[5] I conclude that there is sufficient evidence of "inconsistencies or anomalies" in the record to raise a genuine issue of material fact on plaintiff's pretext claim to survive summary judgment. *See Sempier v. Johnson & Higgins*, 45 F.3d 724 (3d Cir.1995). Although defendant asserts that employees who had violated the Attendance Control

Program in March of 1991 were not terminated because of a one time reduction in points (Def. Exh. A, Second Affidavit of Nancy Hudson), plaintiff has shown that another white male employee had accumulated in excess of sixteen points in March and June of 1990 and was not terminated (Pl. Exh. 3, Rick Vance Attendance Record). Plaintiff also supplies sufficient evidence to create a genuine issue of material fact as to whether white employees were assessed points on a regular basis for the same conduct for which African American employees accumulated points, and whether white employees were assessed the same amount of points during extended sick leave as plaintiff was (Pl. Exhs. B & D, Affidavits of David Brown and Cliff Holloman). Furthermore, plaintiff provides evidence of racial animus on the part of the supervisors who decided whether to assess employees points under the Attendance Program (Pl. Exh. E, Dennis Zappone Affidavit).

### B. Hostile Work Environment

■ I will deny the motion for summary judgment on the hostile environment claim. To establish a hostile environment claim plaintiff must prove:

1. The employees suffered intentional discrimination because of their race. *Spain v. Gallegos*, 26 F.3d 439, 447 (3d Cir.1994). Plaintiff presents his deposition testimony, as well as affidavits of Dennis Zappone and Cliff Holloman which provide evidence of intentional discrimination.

■ 2. The discrimination was regular and pervasive. *Id.* This is supported by evidence of numerous specific instances of intentional discrimination by supervisors in the maintenance department, that supervisors in the maintenance department are quick to discipline African American employees but do not discipline white employees for the same mistakes, and that the Attendance Control Program is strictly enforced against African American workers but that white

---

5. I find it curious for defendant to suggest, as it did at pages 27–29 in its memorandum in support of motion for summary judgment, that I endorse the "pretext plus" theory despite explicit Third Circuit law rejecting this theory. *See Fuentes v. Perskie*, 32 F.3d 759 (3d Cir.1995). As

a District Court in the Eastern District of Pennsylvania I am bound by Third Circuit law and would never knowingly ignore decisions of the appellate court regardless of whether I agree with them.

employees have escaped termination when they have accumulated more than sixteen points. (Pl. Exhs. B, D & E, Affidavits of David Brown, Cliff Holloman, and Dennis Zappone).

■ 3. The discrimination detrimentally affected the plaintiff. *Id.* This is met by evidence that plaintiff sometimes he had to do the job of two or three persons without any assistance (Brown depo. p. 223), that he was terminated from his employment, and that he felt that the environment was hostile (Brown depo. p. 220).

■ 4. The discrimination would detrimentally affect a reasonable person in the same position. *Id.* This is met by plaintiff's evidence that he was given points for lateness under the attendance policy while white workers in the similar circumstances were not, that he was terminated when he accumulated in excess of sixteen attendance points while white employees were not, that supervisors were quick to discipline African American workers but did not discipline white workers for the same mistakes, and that supervisors used racial slurs to refer to African American employees, stated that they "would have to get rid of the worthless blacks," and discouraged others from teaching useful skills to African American workers (Pl. Exhs. B, D & E, Affidavits of David Brown, Cliff Holloman, and Dennis Zappone Affidavit).

■ 5. The existence of respondeat superior liability. *Id.* Plaintiff has met this factor by showing that the supervisors in the maintenance department were the cause of his allegations. If evidence is shown that a supervisory employee himself or herself created the hostile environment, a fortiori the requirement of respondeat superior is shown. *Cf. Andrews v. City of Philadelphia,* 895 F.2d 1469 (3d Cir.1990).

**6.** In force in Pennsylvania is a workshare agreement between the EEOC and the PHRC whereby a complaint filed with the EEOC is transmitted by the EEOC to the PHRC and constitutes a filing of a complaint with the PHRC. *Lukus v. Westinghouse Electric Corp.,* 276 Pa.Super. 232 271–273, 419 A.2d 431 452–453 (1980); *Hayman*

## C. Retaliation

■ I will deny the motion for summary judgment on the retaliation claim. The elements of a retaliation claim are that: 1) plaintiff engaged in protected conduct; 2) his employer took adverse action against him; and 3) a causal link between the protected conduct and the adverse action. *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).

■ At issue is whether there was a causal relationship between plaintiff's protected conduct and the adverse action. Plaintiff was terminated four months after he filed a complaint with the Equal Employment Opportunity Commission (EEOC), and plaintiff provides evidence that at the end of the meeting where he was terminated Ms. Hudson said "I'll be seeing you down at the EEOC" (Pl. Exhs. B & B–11, David Brown affidavit ¶ 12, and Richard Bradbury letter). Depending on the context and the mode of communication, this statement could raise the necessary inference of causation.

## IV. Pennsylvania Human Relations Act

Defendant moves for summary judgment on plaintiff's state law PHRA claim on the grounds that he has failed to exhaust his administrative remedies. I will deny this motion.

■ To properly invoke the PHRC's jurisdiction, a plaintiff must file a verified complaint setting forth the particular allegations of discriminatory practice. 43 Pa.Stat. Ann. § 959(a).[6] Plaintiff's EEOC complaint was not verified, but the accompanying affidavit setting forth the allegations in more detail was. (Def. Exh. B, David Brown's August 10, 1992, EEOC Complaint). Defendant argues that plaintiff's failure to file a verified complaint entitles it to summary judgment.

*v. WYXR–FM,* 1992 WL 210113 at *3 (E.D.Pa. Aug. 21 1992). Plaintiff filed his discrimination complaint with the EEOC on August 10, 1992. The EEOC sent a copy of plaintiff's complaint to the PHRC. (Defendant's Exh. C August 19, 1992 letter from EEOC to David Brown).

Although Pennsylvania law is unsettled on whether an unverified complaint adequately invokes the jurisdiction of the PHRC, *Pennsylvania Human Relations Commission v. School District of Philadelphia*, 522 Pa. 436, 562 A.2d 313 (1989), because plaintiff's verified affidavit set forth in more detail the same allegations as contained in his complaint—he swore that the allegations set forth in the complaint were true—I hold that at least in this case the verification requirement was satisfied.

## V. Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment as Untimely

Plaintiff moves to strike defendant's motion for summary judgment as untimely because although defendant timely filed its motion, it later filed a corrected version of its supporting memorandum five days after the deadline for dispositive motions as set by this court. I will deny this motion as without merit.

### *ORDER*

And now, this 7th day of July, 1995, upon consideration of defendant's motion for summary judgment addressed to plaintiff's First Amended Complaint as supplemented by Count V, the PHRA claim, of his Second Amended Complaint, and upon consideration of plaintiff's motion to strike defendant's motion for summary judgment it is ORDERED that:

1. Defendant's motion for summary judgment as to plaintiff's ERISA claim (Count I of his First Amended Complaint) is GRANTED.

2. Defendant's motion for summary judgment as to plaintiff's Americans with Disabilities Act claim (Count VII of his First Amended Complaint) is GRANTED.

3. Defendant's motion for summary judgment as to plaintiff's Title VII claims (Counts V and VIII of his First Amended Complaint) is DENIED.

4. Defendant's motion for summary judgment as to plaintiff's PHRA claim (Count V of his Second Amended Complaint) is DENIED.

5. Plaintiff's motion to strike defendant's motion for summary judgment is DENIED.