Thomas C. LAYSER

v.

Donald W. MORRISON and West
Chester State University.

Civil Action No. 95–1450.

United States District Court,
E.D. Pennsylvania.

Dec. 4, 1995.

Don Bailey, Steven W. Alm, Bailey, Hardy & Alm, and David S. Brady, Harrisburg, PA, for plaintiff.

Frederic Roller, Marshall, Dennehey, Warner, Coleman & Goggin, Andrea M. Jenkins, Margolis, Edelstein and Scherlis, John O.J. Shellenberger, III, and Lisa K. Coleman, Office of Attorney General, Philadelphia, PA, for defendants.

### MEMORANDUM

PADOVA, District Judge.

Plaintiff, Thomas C. Layser, filed a Complaint against Defendants West Chester State University ("West Chester") and Dr. Donald Morrison, asserting violations of the Americans With Disabilities Act, 42 U.S.C.A. § 12101–12213 (West 1995 & Supp.) ("ADA") and 42 U.S.C.A. § 1983 (West 1994). Plaintiff asserts two additional state claims against Dr. Morrison alleging medical malpractice and a breach of the psychotherapist-patient privilege. Defendants separately filed Motions for Summary Judgment to which Plaintiff did not respond. Defendants demonstrated that (1) genuine issues of material fact do not exist, and (2) Plaintiff is

unable to sustain causes of action under either the ADA or the United States Constitution. Accordingly, I will grant Defendants' Motions.

## I. *FACTS*

On March 26, 1988, Plaintiff began working for West Chester as a security officer for the West Chester State University campus. West Chester officers patrol the campus carrying firearms while one officer on each shift acts as the "dispatcher" who stays in the police station relaying calls. Plaintiff patrolled the campus. Between 1988 and 1990, West Chester passed over Plaintiff for eight promotions. Since 1990, Plaintiff has not applied for promotions, and no positions have become available. In October 1990, Plaintiff filed an unsuccessful grievance with his union representative alleging unfair treatment and accusing Michael Bicking, the West Chester University security chief who headed the promotion board, of treating him unfavorably. In a February 11, 1992 evaluation, Bicking described Plaintiff's attitude as unsatisfactory and rated Plaintiff overall as "low scale good."

On or around February 14, 1992, Layser had a dream he walked into Bicking's office, pulled his revolver out of the holster, and pointed the gun at Bicking's forehead. Believing he was suffering from work-related stress and depression, Layser immediately sought professional help from Dr. William Morrison. Layser told Dr. Morrison about the dream, and Dr. Morrison, fearful that Layser presented a threat to Bicking's safety, promptly warned Bicking. On February 17, 1992, Bicking repossessed Layser's revolver. West Chester subsequently put Layser on sick leave with pay, requiring clearance from Dr. Morrison before allowing him to return to work.

On April 24, 1992, Plaintiff met with William Schweitzer, head of personnel for West Chester. Schweitzer furnished Plaintiff with a list of conditions prepared by Bicking limiting Plaintiff's employment. Significantly, Bicking required that Plaintiff (1) remain on dispatch duty without a revolver during an observation period, the length of which was to be determined; (2) receive a second opinion from another psychologist; and (3) be subject to dismissal in the event of any violent behavior. On May 13, 1992, Dr. Morrison wrote Bicking, stating that Plaintiff had enough self control to return to work subject to the beforementioned stipulations. Dr. Morrison wrote another letter on May 18, 1992 recommending Plaintiff for full active duty without any conditions.

On May 27, 1992, Layser returned to active duty as a dispatcher without a firearm. On April 14, 1993, Layser received a second psychiatric opinion, and West Chester reissued his firearm on April 29, 1993. On May 14, 1993, Layser resumed regular street patrol. Bicking appointed Layser "Officer in Charge" in April 1994, a position Layser still holds. On July 28, 1993, Layser filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that West Chester discriminated against him on the basis of a perceived disability in assigning him to the dispatch position from May 1992 until April 1993.

## II. *STANDARD OF REVIEW*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence with which a reasonable jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Furthermore, bearing in mind that all uncertainties are to be resolved in favor of the nonmoving party, a factual dispute is only "material" if it might affect the outcome of the case. *Id.* A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

**566**

(1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id* at 322, 106 S.Ct. at 2552.

### III. DISCUSSION

#### A. Constitutional Claims

■ Plaintiff alleges that Defendants conspired to violate his XIV Amendment rights in violation of 42 U.S.C.A. § 1983 by "depriving Plaintiff of his protected interest in his public employment as a property right ... [and limiting] Plaintiff's opportunities to perform his duties and earn a living as a public employee." Pl.'s Compl. ¶ 70. Plaintiff cannot bring a suit against either West Chester or Dr. Morrison under § 1983 because neither Defendant is a "person" within that statute. "To succeed on a § 1983 claim, a plaintiff must demonstrate that the conduct complained of was committed by a person acting under color of state law and that the conduct resulted in the deprivation of rights, privileges, or immunities guaranteed by the United States Constitution." *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir.1994).

■ West Chester University's status as a state agency with sovereign immunity precludes Plaintiff from asserting a § 1983 claim against West Chester. "[A] State is not a person within the meaning of § 1983." *Will v. Michigan Department of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989). "The Eleventh Amendment bars such suits unless the State has waived its immunity ... [or unless Congress overrides]

that immunity." *Will,* 491 U.S. at 66, 109 S.Ct. at 2309–2310 (citation omitted). Congress did not intend to disturb a state's Eleventh Amendment immunity in passing § 1983. *Will,* 491 U.S. at 66, 109 S.Ct. at 2310. Pennsylvania has neither waived its immunity nor consented to be sued in federal court. 42 Pa.Cons.Stat.Ann. § 8521 (West 1982). West Chester is a constituent university of the State System of Higher Education. 24 Pa.Cons.Stat.Ann. § 20–2002–A(a)(14) (West 1992). "The State System is, effectively, a state agency and therefore entitled to the protection of the Eleventh Amendment in federal courts." *Skehan v. State Sys. of Higher Education,* 815 F.2d 244, 249 (3d Cir.1987). Thus, West Chester, as an arm of the State, enjoys Eleventh Amendment immunity which precludes a § 1983 claim, and Plaintiff has not submitted any evidence to the contrary.

■ Similarly, Layser's § 1983 claim against Dr. Morrison fails because Dr. Morrison does not qualify as a state actor for purposes of § 1983. Private physicians unaffiliated with a state institution are not state actors. *Harvey v. Harvey,* 949 F.2d 1127, 1132–1133 (11th Cir.1992); *Briley v. California,* 564 F.2d 849, 855–856 (9th Cir.1977). *Cf. West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 2258, 101 L.Ed.2d 40 (1988) (finding physician who was under contract with state to provide medical services to inmates in state prison hospital acted under color of state law within § 1983). Defendants point to Dr. Morrison's deposition testimony that he was engaged in private practice and was not formally associated with West Chester. Layser testified at his deposition that he contacted Dr. Morrison on his own initiative, and his employer did not refer him to Dr. Morrison. He was aware that Dr. Morrison was not a West Chester employee and knew Dr. Morrison practiced privately. Layser has not provided any submissions to contradict the conclusion that Dr. Morrison is not formally affiliated with West Chester.[1]

---

1. Plaintiff's Complaint also refers to a "conspiracy" on the part of Defendants to violate Plaintiff's civil rights. Although the Complaint does not specifically designate it as such, I treat this allegation as an attempt to raise a claim under

42 U.S.C.A. § 1985 (West 1994) ("Conspiracy To Interfere With Civil Rights"). This claim fails, however, because § 1985 only applies to those interferences founded upon class-based or invidious racial discriminatory intent. *Maida v. And-*

Accordingly, I will grant Defendants' Motions with respect to Plaintiff's constitutional claims.

## B. *Americans With Disabilities Act*

Layser claims West Chester violated the ADA by removing him from patrol duty, stripping him of his firearm, placing conditions on his employment, assigning him to the dispatcher position, and not granting him overtime assignments. The ADA "prohibits discrimination in employment matters against qualified individuals with a disability." *Fehr v. McLean Packaging Corp.*, 860 F.Supp. 198, 199 (E.D.Pa.1994). After reviewing Defendants' submissions, I conclude that Layser could not present a successful claim under the ADA.

### 1. *Timing Requirements*

■ Plaintiff's ADA claims are time barred. In his EEOC Complaint filed on July 28, 1993, Plaintiff described the period of discrimination as lasting from May 27, 1992, when he was assigned to the dispatcher position, until July 25, 1993, three days before he filed the EEOC Complaint. I do not agree with this assessment. Plaintiff bases his ADA claims on West Chester's decision (1) to impose a list of conditions on his employment which were given to him on both April 24, 1992 and May 8, 1992 and which became effective May 27, 1992; (2) to remove his firearm on February 17, 1992; and (3) to place Plaintiff at the dispatcher position beginning on May 27, 1992.

■ The powers, remedies, and procedures of "Title VII" (42 U.S.C.A. §§ 2000e–2000e–17) (West 1994) claims apply to the ADA. 42 U.S.C.A. § 12117(a). In determining when a Title VII claim begins to run, "the proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts [become] most painful." *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 907, 109 S.Ct. 2261, 2266, 104 L.Ed.2d 961 (citation omitted) (emphasis in original). Plaintiff had knowledge of all facts relating to West Chester's alleged discrimination on May 27, 1992, and he has not submitted any evidence that might contradict this conclusion. Thus, May 27, 1992 stands as the date of West Chester's alleged unlawful acts.

■ Layser cannot bring a suit under the ADA based upon employment discrimination claims which arose prior to passage of the ADA. *Brown v. Continental Baking Co.,* 891 F.Supp. 238, 241 (E.D.Pa.1995). The ADA became effective on July 26, 1992 and Layser had knowledge of the alleged discrimination on May 27, 1992. *Id.* Thus, his claim does not fall within the ambit of the ADA. Even if the alleged acts upon which Layser bases his ADA claim occurred after the ADA became effective, the claims would still be time barred because the acts took place more than 300 days before he filed a charge with the EEOC. "A charge of employment discrimination must be filed within 300 days 'after the alleged unlawful employment practice occurred.' This filing is a prerequisite to a civil suit under Title VII." *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995) (citation omitted). "The 300 day period applies where the plaintiff has initially instituted proceedings with a State or local agency. Otherwise the applicable period is 180 days." *Id.* at 754 n. 8 (citing 42 U.S.C.A. § 2000e–5(e)).[2] Because Layser has failed to comply with the timing requirements of Title VII, I conclude his ADA claim is not properly before this Court.[3]

---

*ros,* 710 F.Supp. 524, 530 (D.N.J.1988) (citation omitted). Layser makes no such allegation in his Complaint.

**2.** Layser did file a charge with the West Chester Affirmative Action Office on January 5, 1993, but this had no effect on the tolling of his ADA claim. *See Trevino–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 879 (3d Cir.1990) (finding that Plaintiff's filing of a letter with the Pennsylvania Human Rights Commission had no effect on an otherwise valid filing with the EEOC).

**3.** The first paragraph in Plaintiff's Complaint asserts West Chester violated his rights as secured by "42 U.S.C.A. § 2000 et seq [sic]." Pl.'s Compl. ¶ 1. Plaintiff does not reassert this claim when he delineates the Counts later in the Complaint. Even if he had, however, his failure to comply with the time requirements of Title VII would preclude his claim.

### 2. *The Application of the ADA*

Even if Layser did file his Complaint within the applicable time limitations, he has failed to present sufficient submissions which would convince a jury that he was an individual who suffered discrimination as a result of a disability in violation of the ADA. First, Layser cannot point to any evidence that he suffered from a "disability" as articulated in the statute.[4]

█ West Chester has provided submissions which illustrate that it did not substantially limit Layser's major life activity of working. First, Layser admitted at his deposition that West Chester did not regard him as limited in his general ability to function, perform routine tasks, and take care of himself. He also concedes West Chester questioned only his ability to perform certain duties required of his position. While West Chester removed Layser from a particular job, patrol officer, it retained him in another capacity, as a dispatch officer. With respect to working, the regulations dictate that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3). "An individual is not substantially limited in working just because he or she is unable to perform a particular job for one employer ..." 29 C.F.R. § 1630 App. Layser has not provided summary judgment evidence that his impairment substantially limited a major life activity. Accordingly, a jury could not conclude that Layser suffered from a disability as defined in the ADA. *See Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir.1995) (noting " 'working' does not mean working at a particular job of that person's choice. An impairment that disqualifies a person from a narrow range of jobs is not considered a substantially limiting one") (citations omitted); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir.1995) (stating "the inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to a substantial limitation of the activity of working") (citation omitted).

█ The Complaint asserts that Plaintiff did have a "disability" as defined by the ADA because West Chester regarded him as suffering from a mental impairment in violation of 42 U.S.C.A. § 12102(2)(C). "A person is 'regarded as having' an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment." *Wooten*, 58 F.3d at 385.

Plaintiff's only basis for concluding West Chester regarded him as having a mental impairment is West Chester's temporarily removing his firearm, placing conditions on his employment, and assigning him to the dispatcher position. West Chester obviously believed Plaintiff could serve as a security officer, however, because it retained him on the force as a dispatching officer, reissued his firearm on April 29, 1993, reassigned him to regular street patrol on May 14, 1993, and appointed him "Officer in Charge" in April, 1994. Moreover, these limitations resulted from Dr. Morrison's warning that Plaintiff might have inflicted serious harm on Bicking. West Chester responded to this warning accordingly and tailored its limitation on Plaintiff's employment to prevent against a potentially dangerous situation.[5] In the absence of

---

4. Section 12102(2) defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities ... (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2). "Substantially limits" means:

"(i) unable to perform a major life activity that the. average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."

29 C.F.R. § 1630.2(j)(1) (1994). "Major life activities" refer to "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

5. West Chester also points to *Daley v. Koch*, 892 F.2d 212 (2d Cir.1995) and *Smaw v. Virginia Dep't of State Police*, 862 F.Supp. 1469 (E.D.Va. 1994) in support of its Motion. I find both cases persuasive. In *Daley*, the United States Court of Appeals for the Second Circuit found that "poor judgment, irresponsible behavior, and poor impulse control" did not amount to a mental impairment "which substantially limits a major life

any submissions by Layser to the contrary, I find summary judgment appropriate on Layser's ADA claims.

■ Even if Layser could argue he suffered from a disability, it was too temporary to warrant relief under the ADA because West Chester only removed him from active duty for approximately three months. The regulations state "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. § 1630 App. *See McDonald v. Pennsylvania Dep't of Public Welfare,* 62 F.3d 92, 96 (3d Cir.1995) (finding inability to work for slightly under two months "not permanent, nor for such an extended time as to be the type contemplated by the [ADA]").

■ Finally, I note that Layser cannot bring an ADA claim against Dr. Morrison, a private physician with no affiliation to Layser's employer, because Dr. Morrison does not qualify as a covered entity under the ADA. *See* 42 U.S.C.A. §§ 12111(2), 12112(a).

### 3. *Affirmative Defenses*

■ West Chester contends that even if Layser can show he suffered from a disability under the ADA and filed his Complaint on time, affirmative defenses provided by the ADA would prevent Layser from proving discrimination. I agree. The ADA provides that it may be a defense to a charge of discrimination that certain qualifications standards and selection criteria are job related, consistent with business necessity, and accomplished by reasonable accommodation. *See* 42 U.S.C.A. § 12113(a). "Qualification standards" include "a requirement that an individual shall not pose a direct threat to the health and safety of other individuals in the workplace." 42 U.S.C.A. § 12113(b). "Direct threat" means "a significant risk to the health and safety of others that cannot be

eliminated by reasonable accommodation." 42 U.S.C.A. § 12111(3).

In support of its contention that Layser posed a significant risk to others, West Chester points to the following evidence. Dr. Morrison testified that after meeting with Layser, Dr. Morrison contacted Bicking to inform him that Layser had thoughts of hurting Bicking. Dr. Morrison feared Layser would, in fact, act on his images of shooting Bicking in the head. When requesting workers compensation for his sick leave, Layser stated "I told him [Dr. Morrison] that I had never really felt like this before, and that as an armed police officer, I felt that I should not go to work until I got better control of the stress and anger that was bothering me." Def.'s [West Chester] Mem.Supp.Summ.J. Ex. 9. "I told him that I didn't know what was happening to me, but that I feared that if I had to go to work right now and deal with the Director [Bicking] or others that I was angry with while I felt as I did I might end up in trouble." *Id.* West Chester has provided sufficient submissions to illustrate the potential harm Layser posed was significant. The evidence presented could prove that a threat existed that Layser might have, acting under stress, anger, and depression, shot Bicking. Layser has not provided any summary judgment evidence to contradict this. Accordingly, I find that West Chester has shown that affirmative defenses available to it under the ADA would preclude Layser's claim.

### C. *Medical Malpractice*

■ Counts III and IV of Layser's Complaint assert causes of action against Dr. Morrison for medical malpractice and violations of the psychotherapist-patient privilege. Specifically, Layser alleges the Dr. Morrison did not treat him according to the appropriate professional standards in breaching the psychotherapist-patient privilege and notifying Bicking that Layser posed a threat. Pl.'s

---

activity, and therefore a person having those traits or perceived as having those traits cannot be considered a handicapped person within the meaning of the [ADA]." *Id.* at 215. Similarly, in *Smaw,* the Virginia State Police assigned the plaintiff to a dispatcher position. The Court found Smaw was not substantially limited as

required by the ADA because "the proper scope of Smaw's occupation is the field of law enforcement as a whole.... Smaw is presently employed in her field, and ... her employer has given no indication that it views her as unable to work as a law enforcement officer." *Smaw,* 862 F.Supp. at 1475.

Compl. ¶ 22. Layser cannot sustain these causes of action because the applicable limitations period has lapsed. Under Pennsylvania law, a two year statute of limitations applies to any actions to recover damages for injuries caused by the negligence of another. *See Pucci v. Litwin,* 828 F.Supp. 1285, 1299 (N.D.Ill.1993) (finding federal court exercising supplemental jurisdiction applies, absent a borrowing statute, the forum state's statute of limitations); 42 Pa.Cons.Stat.Ann. § 5524(2) (West 1981 & 1995 Supp.). The statute of limitations in a medical malpractice case commences when "the plaintiff has knowledge, or through the exercise of reasonable diligence, would have had knowledge of (1) his or her injury; (2) the operative cause of his or her injury; and (3) the causative relationship between his or her injury and the operative conduct." *Citsay v. Reich,* 380 Pa.Super. 366, 551 A.2d 1096, 1098 (1988) (citation omitted). Dr. Morrison testified that he told Layser on February 14, 1992 that certain legal obligations demanded Dr. Morrison to warn Bicking of Layser's feelings.

■ Layser learned about the alleged malpractice on February 14, 1992 and waited over two years, until March 10, 1995, to file the instant action. Layser has not submitted any summary judgment evidence which contradicts this and could prove the Dr. Morrison committed negligent acts which Layser was not aware of after February 14, 1992.[6] Thus, summary judgment is proper on these claims.

### ORDER

AND NOW, this 5th day of December, 1995, upon consideration of Defendant West Chester State University's unopposed Motion for Summary Judgment (Doc. No. 22) and Defendant Donald W. Morrison's unopposed Motion for Summary Judgment (Doc. No. 23), IT IS HEREBY ORDERED THAT:

1. Defendant West Chester State University's Motion for Summary Judgment is GRANTED.

2. Defendant Donald W. Morrison's Motion for Summary Judgment is GRANTED.

3. Judgment is entered in favor of Defendants, West Chester State University and Dr. Donald W. Morrison, and against Plaintiff, Thomas C. Layser.

4. The Clerk of the Court shall mark this case CLOSED.

---

6. Layser's filing a lawsuit against Dr. Morrison in a Pennsylvania state court on February 14, 1994, within the limitations period, has no effect on my decision. "[T]he commencement of an action in state court has no effect on the running of the statute with respect to an action filed later in federal court." *Price v. United States,* 466 F.Supp. 315, 318 (E.D.Pa.1979) (citations omitted).